UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE MOSAIC AND TERRAZZO WELFARE, PENSION, ANNUITY, AND VACATION FUNDS and TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, | No. 18 cv_____ |
| Plaintiffs, | **COMPLAINT** |
| -against- | |
| ELITE TERRAZZO FLOORING, INC. and PICNIC WORLDWIDE LLC, | **Jury Trial Demanded** |
| Defendants. | |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their

Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action under section 502(a)(3) of the Employee Retirement Income

Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3); section 301 of the Labor

Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185; to collect delinquent

employer contributions to a group of employee benefit plans, for declaratory relief, and for related

relief.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367,

and 29 U.S.C. §§ 185 and 1132(e)(1).

3.      Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA

Funds (as defined below) are administered in this district.

## THE PARTIES

4.      Plaintiffs Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds (the "Local Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c).  The Local Funds are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3), and are administered at 45-34 Court Square, Long Island City, New York 11101.

5.      Plaintiffs Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "IPF" and together with the Local Funds, the "Funds") are employer and employee trustees of a multiemployer labor-management trust fund organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c).  The IPF is an employee benefit plan within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is administered at 620 F Street, N.W., Washington, D.C. 20004.

6.      Defendant Elite Terrazzo Flooring, Inc. ("Elite") is a New Jersey corporation having a principal place of business at 185 5th Avenue, Paterson, New Jersey 07524.  At relevant times, Elite is and was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and is and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142.

7.      Defendant Picnic Worldwide LLC ("Picnic Worldwide"), a New Jersey corporation having a principal place of business at 26 Overlook Avenue, North Haledon, NJ 07508.  At relevant times, Picnic Worldwide is and was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and is and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142.

## FACTS

### The Collective Bargaining Agreements

8.       The Mosaic, Terrazzo and Chemical Product Decorative Finisher Masons Workers Association Local No. 7 of New York, New Jersey & Vicinity of the International Union of Bricklayers and Allied Craftworkers (the "Union") is a labor organization that represents employees in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142.

9.       At relevant times, Elite is and was a party to, or manifested an intention to be bound by a collective bargaining agreement ("CBA") with the Union.

10.       The Funds were established pursuant to the terms of various collective bargaining agreements between the Unions and various employers.  The Funds provide welfare, pension, annuity, and other benefits to covered employees, retirees, and their dependents.  The Funds are operated by Trust Agreements, which are incorporated by reference in the CBA.

11.       The CBA requires employers, *inter alia*, to make specified hourly contributions to the Funds and related entities on behalf of which they act as collection agents in connection with all work performed in the trade and geographical jurisdiction of the Union ("Covered Work").

12.       The CBA further requires employers, *inter alia*, to report to the Funds the number of hours of Covered Work performed by each employee during the preceding month.

13.       Section 301 of the LMRA, 29 U.S.C. § 185, authorizes this Court to enforce the CBA.  In addition, section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such

contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

14.    Pursuant to the collection policies adopted by the Local Funds, employers are required to submit to periodic audits upon request by the Local Funds. Employers who fail to cooperate or refuse access to the Local Funds' auditor are subject to a monetary assessment by the Local Funds, plus reasonable attorneys' fees and costs incurred in enforcing the audit requirement, plus the cost of the audit.

15.    Pursuant to the collection policies adopted by the Local Funds, an employer that fails to make prompt and timely payment of fringe benefit contributions shall be subject to an interest charge at the rate of ten percent (10%) per annum; liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions owing; plus reasonable attorneys' fees, audit fees, and other costs incurred during the audit and collections procedures.

16.    Pursuant to the collection policies adopted by the IPF, employers are required to submit to periodic audits upon request by the IPF. Employers found to be delinquent through such audit shall be liable for the cost of the audit.

17.    Pursuant to the collection policies adopted by the IPF, an employer that fails to make prompt and timely payment of fringe benefit contributions shall be subject to an interest charge at the rate of fifteen percent (15%) per annum; liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions owing; plus reasonable attorneys' fees, audit fees, and other costs incurred during the audit and collections procedures.

**The Funds' Judgment against Elite Flooring**

18.     In or around May 2015, the Funds entered into a settlement agreement with Elite whereby Elite agreed to pay $874,236.01 over approximately two and a half years.  Elite's principal, Chris Picinic, personally guaranteed the settlement agreement.

19.     Elite defaulted on the settlement agreement.

20.     On or about June 23, 2015, the Funds obtained a federal judgment against Elite in the amount of $774,236.01 ("Federal Judgment").

21.     On June 15, 2015, the Funds obtained a state court judgment against Elite in the amount of $774,236.01 (together with the Federal Judgment, the "Judgments").

22.     To date, $694,761.16 remains outstanding on the Judgments.

**Contributions Owed by Elite to the Funds**

23.     Pursuant to the CBA, Elite submitted reports detailed the contributions owed for the period March 1, 2015 through June 7, 2015.  The reports indicated that Elite owes contributions to the Funds for work performed March 1, 2015 through June 7, 2015 in the amount of $218,838.23.

24.     Elite also failed to submit reports and contributions in connection with work performed June 8, 2015 through the present.

**Alter Ego and Successor/Predecessor Allegations**

25.     At relevant times, Defendants Elite and Picnic Worldwide (collectively, "Defendants") are and were alter egos and/or successors/predecessors of each other and had substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

26.     At relevant times, Defendants are and were engaged in the business of tile work, flooring, and related building and construction work.

27.     Defendant Picnic Worldwide is nominally owned by Elizabeth Then.

28.     Defendant Elite is owned by Chris Picinic.

29.     Upon information and belief, Defendants are operated or controlled by Chris Picinic.

30.     Representatives of Local 7 observed Chris Picinic working on a project located at 3 Columbus Circle with three employees of Picnic Worldwide.

31.     Upon information and belief, each of the Defendants performs tile, flooring, and related work and work on each other's projects without any meaningful distinction in their operations.

32.     Picnic Worldwide is performing and/or has performed terrazzo work on various projects in New York City, including the 3 Columbus Circle project and a project at the New School.

33.     Upon information and belief, the Defendants use the same equipment, vehicles, and facilities and employ each other's workers without any meaningful distinction in their operations.

34.     At relevant times, Defendants share or have shared the same office staff and employ or have employed the same workers on their respective projects.

35.     Upon information and belief, Defendants failed to follow ordinary corporate formalities or keep separate records, and there was never an arm's length relationship between or among the Defendants.

36.     Upon information and belief, Defendant Picnic Worldwide was formed solely or primarily for the purpose of avoiding Defendant Elite's contractual and statutory obligations to the

Funds, by performing work within the same trade and geographical jurisdiction of the Unions without conforming to the terms of the CBA.

37.     Upon information and belief, Defendants are alter egos, successors, and/or predecessors of each other.  Accordingly, each is subject to the terms of the CBA entered into by Elite, and each is liable for each other's unpaid contributions to the Funds.

## FIRST CLAIM FOR RELIEF

38.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 37 above and incorporate them herein by reference.

39.     At relevant times, Elite is and was a party to, or manifested an intention to be bound by the CBA.

40.     At relevant times, Defendants are and were alter egos and/or successors of each other and had substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.

41.     By virtue of their status as alter egos, successors, and/or predecessors of each other, Defendants are and have all relevant times been bound by the CBA and are jointly and severally liable for each other's unpaid contributions to the Funds for the period March 2015 through the present.

42.     The CBA and the documents and instruments governing the Funds require Defendants, *inter alia*, to make specified hourly contributions to the Funds in connection with all Covered Work.

43.     The CBA and the documents and instruments governing the Funds require Defendants, *inter alia*, to submit to and comply with periodic payroll audits demanded by the Funds.

44.     Upon information and belief, Defendants dispute the Funds' contention that Defendants are alter egos, successors/predecessors.

45.     An actual controversy has arisen and now exists between the parties with respect to the status of Defendants as alter egos and/or successors/predecessor.

46.     Accordingly, the Funds seek a judicial determination, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendants are alter egos or successors/predecessors, that Defendants have all times been bound by the CBA, and that Defendants are jointly and severally liable for each other's unpaid contributions to the Funds for the period March 2015 through the present.

## SECOND CLAIM FOR RELIEF

47.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 46 above and incorporate them herein by reference.

48.     At relevant times, Elite is and was a party to, or manifested an intention to be bound by the CBAs.

49.     The CBAs and the documents and instruments governing the Funds require Elite, *inter alia*, to make specified hourly contributions to the Funds in connection with all Covered Work.

50.     In or around May 2015, the Funds entered into a settlement agreement with Elite whereby Elite agreed to pay $874,236.01 over approximately two and a half years.  Elite's principal, Chris Picinic, personally guaranteed the settlement agreement.

51.     Elite defaulted on the settlement agreement.

52.     On or about June 23, 2015, the Funds obtained a federal judgment against Elite in the amount of $774,236.01.

53.     On June 15, 2015, the Funds obtained a state court judgment against Elite in the amount of $774,236.01.

54.     To date, $694,761.16 remains outstanding on the Judgments.

55.     At relevant times, Defendants are and were alter egos or successors/predecessors of each other.

56.     By virtue of their status as alter egos, successors, and/or predecessors of each other, Defendants are and have at all times been bound by the CBAs and are jointly and severally liable for the balance of the Judgments, plus additional interest, reasonable attorneys' fees, expenses, and costs incurred by the Funds during collection procedures.

## THIRD CLAIM FOR RELIEF

57.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 56 above and incorporate them herein by reference.

58.     At relevant times, Elite is and was a party to, or manifested an intention to be bound by the CBA.

59.     At relevant times, Defendants are and were alter egos or successors/predecessors of each other.

60.     By virtue of their status as alter egos, successors, and/or predecessors of each other, Defendants are and have all times been bound by the CBA and are jointly and severally liable for each other's unpaid contributions to the Funds for the period March 2015 through the present.

61.     The CBA and the documents and instruments governing the Funds require Defendants, *inter alia*, to make specified hourly contributions to the Funds in connection with all Covered Work.

62.     Elite failed to remit contributions for Covered Work performed from March 1, 2015 through June 7, 2015 in the amount of $218,838.23 and contributions in an unknown amount for June 8, 2015 through the present.

63.     Picnic Worldwide failed to remit contributions to the Funds for Covered Work performed May 2017 through the present.

64.     Defendants contravened the CBA and Section 515 of ERISA by failing to pay contributions to the Funds for the period March 1, 2015 through the present in connection with work performed by Elite and Picnic Worldwide in an amount to be determined at trial.

65.     Accordingly, pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. § 1132 and 1145, the CBA, and the documents and instruments governing the Funds, Defendants are jointly and severally liable to the Funds for all delinquent contributions in connection with work performed by Elite and Picnic Worldwide in an amount to be determined at trial, plus interest at the rate of ten percent (10%) per annum with respect to amounts due to the Local Funds and fifteen percent (15%) per annum with respect to amounts due to the IPF, liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions owing; plus reasonable attorneys' fees, audit fees, and other costs incurred during the audit and collections procedures.

## FOURTH CLAIM FOR RELIEF

66.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 58 above and incorporate them herein by reference.

67.     At relevant times, Elite is and was a party to, or manifested an intention to be bound by the CBA.

68.     At relevant times, Defendants are and were alter egos or successors/predecessors of each other.

69.     By virtue of their status as alter egos, successors, and/or predecessors of each other,
Defendants are and have all times been bound by the CBA.

70.     The CBA and the documents and instruments governing the Funds require
Defendants, *inter alia*, to make specified hourly contributions to the Funds in connection with all
Covered Work.

71.     The CBA and the documents and instruments governing the Funds require
Defendants, *inter alia*, to make specified hourly contributions to the Funds in connection with all
Covered Work and to submit to and comply with periodic payroll audits demanded by the Funds.

72.     Accordingly, pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. § 1132 and 1145,
the CBA, and the documents and instruments governing the Funds, the Funds are entitled to an
order directing Defendants to submit to an audit of Defendants' books and records covering the
period March 2015 through the present and to pay all delinquent contributions revealed by such
audit, plus interest at the rate of ten percent (10%) per annum with respect to amounts due to the
Local Funds and fifteen percent (15%) per annum with respect to amounts due to the IPF,
liquidated damages in the amount of twenty percent (20%) of the amount of delinquent
contributions owing; plus reasonable attorneys' fees, audit fees, and other costs incurred during
the audit and collections procedures.

        **WHEREFORE,** Plaintiffs respectfully request that this Court award judgment as
        follows:

        (1)     On Plaintiffs' First Claim for Relief, declaring that Defendants are alter egos or
                successors/predecessors of each other, that Defendants have all times been bound
                by the CBA, and that Defendants are jointly and severally liable for each other's
                unpaid contributions to the Funds for the period March 2015 through the present;

(2)      On Plaintiffs' Second Claim for Relief, granting judgment to Plaintiffs against all Defendants, jointly and severally, for the balance owed on the Judgments in an amount to be determine at trial, plus interest, reasonable attorneys' fees, and other costs incurred during the collection procedures and litigation;

(3)      On Plaintiffs' Third Claim for Relief, granting judgment to Plaintiffs against all Defendants, jointly and severally, for delinquent benefits in connection with work performed by the Defendants from March 2015 through the present in an amount to be determined at trial, plus interest, liquidated damages, audit fees, reasonable attorneys' fees, and other costs incurred during the audit and collections procedures;

(4)      On Plaintiffs' Fourth Claim for Relief, directing Defendants to submit to an audit of Defendants' books and records covering the period March 2015 through the present and to pay all delinquent contributions revealed by such audit, plus interest, liquidated damages, audit fees, reasonable attorneys' fees, and other costs incurred during the audit and collections procedures; and

(5)      Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demand trial by jury in this action of all issued so triable.

Dated: New York, New York       Respectfully submitted,
       March 9, 2018

                       **VIRGINIA & AMBINDER, LLP**

-13-

By:        /s  Nicole Marimon

Charles R. Virginia
Nicole Marimon
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080
*Attorneys for Plaintiffs*

-13-