UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TRUSTEES OF THE MOSAIC AND
TERRAZZO WELFARE, PENSION,
ANNUITY, AND VACATION FUNDS and
TRUSTEES OF THE BRICKLAYERS &
TROWEL TRADES INTERNATIONAL
PENSION FUND,

                          Plaintiffs,

               -against-

ELITE TERRAZZO FLOORING, INC.,
*et al.*,

                        Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
18 CV 1471 (CBA)(CLP)

POLLAK, Chief United States Magistrate Judge:

On March 9, 2018, plaintiffs, Trustees of the Mosaic and Terrazzo Welfare, Pension,

Annuity and Vacation Funds and Trustees of the Bricklayers & Trowel Trades International

Pension Fund ("plaintiffs" or the "Funds") commenced this action against defendants Elite

Terrazzo Flooring, Inc. and Picnic Worldwide LLC ("defendants"), pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., and

Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C.

§ 185, to collect delinquent employer contributions owed to a group of employee benefit plans,

and for declaratory relief.  (Compl.[1] ¶ 1).

Pending before this Court are plaintiffs' motions for sanctions pursuant to Rules 11 and

37 of the Federal Rules of Civil Procedure.  For the reasons set forth below, plaintiffs' motions

---

[1] Citations to "Compl." refer to the Complaint filed on March 9, 2018, ECF No. 1.

1

are granted and the Court respectfully recommends that the Court enter a default against the defendants.

FACTUAL BACKGROUND

Plaintiffs, the Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds (the "Local Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c).  (Compl. ¶ 4).  The Local Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(21), and they maintain an office at 45-34 Court Square, Long Island City, N.Y.  (Id.)  Plaintiffs Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "IPF") are also trustees of multiemployer labor-management trust funds and employee benefit plans within the meaning of ERISA.  (Id. ¶ 5).  The IFP is located at 620 F Street N.W., Washington, D.C. (Id.)

According to the Complaint, at all relevant times, defendant Elite Terrazzo Flooring, Inc. ("Elite") was a New Jersey corporation, located at 185 5th Avenue, Paterson, N.J., and an employer within the meaning of ERISA.  (Id. ¶ 6).  Defendant Picnic Worldwide LLC ("Picnic Worldwide") is alleged to be a New Jersey corporation and an employer as defined in ERISA, located at 26 Overlook Avenue, North Haledon, N.J.  (Id. ¶ 7).

The Complaint alleges that at all times Elite was a party to a collective bargaining agreement ("CBA") with the Mosaic, Terrazzo and Chemical Product Decorative Finisher Masons Workers Association Local No. 7 of New York, New Jersey & Vicinity of the International Union of Bricklayers and Allied Craftworkers (the "Union"), which required the remittance of contributions to the Funds on behalf of the covered employees.  (Id. ¶¶ 8-11).

2

According to the Complaint, on or about May 2015, the Funds entered into a settlement agreement with Elite whereby Elite agreed to pay $874,236.01 over approximately two and a half years.  (Id. ¶ 18).  When Elite defaulted on the payments, the Funds obtained a judgment on June 15, 2015, in state court in the amount of $774,236.00, and on June 23, 2015, the Funds obtained a judgment in federal court for the same amount.  (Id. ¶¶ 19-21).  As of the date of the Complaint, plaintiffs allege that they continue to be owed $694,761.16.  (Id. ¶ 22).  Plaintiffs further allege that Elite owes contributions to the Funds for the period March 1, 2015 through June 7, 2015. (Id. ¶ 23).

Plaintiffs allege that Elite and Picnic Worldwide are alter egos and/or successors/predecessors of each other with the same ownership, management, business purpose, operation, equipment, customers, and supervision.  (Id. ¶ 25).  Plaintiffs assert that by virtue of their status as alter egos, successors, and/or predecessors of each other, Elite and Picnic Worldwide are and have at all relevant times been bound by the CBA and are jointly and severally liable for the contributions owed to the Funds, and for the amounts owed as a result of the judgment.  (Id. ¶ 41).

<u>PROCEDURAL HISTORY</u>

Following the filing of the Complaint, defendants filed an answer that included counterclaims against plaintiffs under the Racketeer Influenced Corrupt Organization ("RICO") provisions of 18 U.S.C. § 1961 et seq., along with a third-party complaint, asserting claims against Marble Terrazzo and Specialty Contractors Inc., William Zonca, Local 7 Mossaic &

Terrazzo and Chemical Product Finisher Mason Workers Association, and Michael Magnam. (See Picnic Answer;[2] Elite Terrazzo Flooring Answer[3]).

On June 4, 2019, the Honorable Carol B. Amon, United States District Judge, granted plaintiffs' motion to dismiss the RICO counterclaims and dismissed the third-party complaint as well. (ECF No. 63). Also on June 4, 2019, Judge Amon denied the defendants' motion to compel arbitration and granted the Funds' motion for sanctions based on defendants' counsel's admission that he did not review the relevant caselaw before filing a frivolous motion to compel arbitration. (ECF No. 62). The court Ordered defendants' counsel, Richard J. Abrahamsen, Esq., to pay the Funds $11,784.19 within two weeks of the Order. (6/4/19 Order[4] at 15).

On July 8, 2019, plaintiffs submitted a status letter in response to this Court's Order of June 6, 2019. In that letter, plaintiffs indicated that they had been unable to confer about a discovery schedule because they had not been able to reach defendants' counsel in the prior thirty days. (Pls.' 7/8/19 Ltr.[5] at 1). However, plaintiffs proposed their own discovery schedule with fact discovery to be completed by November 12, 2019. (Id.)

In that same July 8, 2019 letter, plaintiffs informed the Court that defendants' counsel had disobeyed Judge Amon's June 4, 2019 Order and had failed to pay the Funds $11,784.19 by the

---

[2] Citations to "Picnic Answer" refer to Picnic Worldwide, LLC's Answer, First Third-Party Complaint, and Counterclaim, filed May 29, 2018, ECF No. 10.

[3] Citations to "Elite Terrazzo Flooring Answer" refer to Elite Terrazzo Flooring Inc.'s Answer to Complaint, Trustees of Mosaic & Terrazzo, First Third-Party Complaint against All Parties, First Counterclaim against All Parties by Elite Terrazzo Flooring, Inc., filed May 29, 2018, ECF No. 10.

[4] Citations to "6/4/19 Order" refer to the Order of the Honorable Carol Bagley Amon imposing sanctions on Abrahamsen, filed June 5, 2019, ECF No. 62.

[5] Citations to "Pls.' 7/8/19 Ltr." refer plaintiff's Motion for Contempt submitted by plaintiffs on July 8, 2019, ECF No. 65.

June 19, 2019 deadline the court had set.  (Id. at 1-2).  Based on defendants' counsel's failure to

obey the court's Order and defendants' counsel's failure to return plaintiffs' emails and phone

calls to discuss the matter, plaintiffs sought further sanctions pursuant to Fed. R. Civ. P. 37 for

defendants' "brazen disobedience of the Court's Order."  (Id. at 2 (citing Kingsway Fin. Servs. v.

Pricewaterhouse-Coopers LLP, No. 03 CV 5560, 2008 WL 5336700, at *10-11 (S.D.N.Y. Dec.

23, 2008))).  Specifically, plaintiffs sought an Order holding defendants and their counsel, Mr.

Abrahamsen, in civil contempt and awarding plaintiffs sanctions of $23,568.38, representing the

full costs of plaintiffs' fees associated with the response to the motion to compel arbitration.  (Id.)

In response, defendants' attorney, Mr. Abrahamsen, submitted a letter, dated July 29,

2019, indicating that he had suffered some health issues and had not been able financially to pay

the sanctions as ordered by the District Court.  (Defs.' 7/29/19 Ltr.[6] at 1).  In the letter, counsel

represented that he had paid half of the sanctions amount and intended to pay the balance "within

30 days."  (Id.)

On July 31, 2019, plaintiffs served defendants with their discovery demands.  (Pls.'

10/22/19 Ltr.[7] at 1).  When defendants failed to respond, plaintiffs served a motion to compel on

September 20, 2019, to which defendants responded in opposition on October 15, 2019.  (Id.)  In

their October 22, 2019 letter to the Court, plaintiffs complain that instead of responding to the

issue of defendants' unresponsiveness to discovery, the defendants' counsel "submitted a

response that reads more like an ill-fated motion to dismiss, filled with non sequiturs and red

---

[6] Citations to "Defs.' 7/29/19 Ltr." refer to the letter submitted by Richard J. Abrahamsen, Esq. dated July 29, 2019. ECF No. 66.

[7] Citations to "Pls.' 10/22/19 Ltr." refer to the letter submitted by plaintiffs dated October 22, 2019, ECF No. 73.

herrings," including arguments that "are either false or so meritless that Mr. Abrahamsen clearly did not perform a reasonable inquiry into whether they have a basis in fact or law."  (Id. at 2). Plaintiffs requested authorization to move for sanctions under Rule 11.  (Id.)  Plaintiffs also noted that despite his representation to the Court in July, counsel for defendants still had not paid the total amount ordered by the District Court in sanctions.  (Id. at 1).

In response to the plaintiffs' October 22, 2019 letter, defendants' counsel seemingly ignores the issue of the previously ordered and still unpaid sanctions award.  Instead, counsel submitted a letter arguing that the Funds "must know who these employees are," that the Funds conducted an audit and have the payroll records and information about the employees, and "so it is not too difficult for the Fund[s] to identify those employees, produce the authorization cards in order to get the information sought in discovery in this case."  (Defs.' 10/31/19 Ltr.[8] at 1-2).  The letter further argues that the defendants were not signatories to the CBA, and that "[i]t seems completely obvious that the Funds have filed this action without a legal predicate in the form of representing beneficiaries of the Fund who recognize Local 7 as their exclusive Collective-Bargaining Representative."  (Id. at 3).  Other than contending that plaintiffs had "no right to conduct a fishing expedition," counsel for defendants does not address his failure to respond to discovery.  (Id.)  Counsel for defendants also argues that Rule 11 sanctions should be imposed on plaintiffs for filing a "frivolous" lawsuit and for counsel's attempt to apply Rule 11 to a discovery dispute.  (Id. at 3).

---

[8] Citations to "Defs.' 10/31/19 Ltr." refer to the letter submitted on behalf of defendants, dated October 31, 2019, ECF No. 74.

On November 4, 2019, this Court held a conference with counsel, at which time plaintiffs agreed to withdraw their motion to compel without prejudice, and defendants were given two weeks to respond to outstanding discovery.  When defendants failed to provide discovery by November 18, 2019 as Ordered by this Court, plaintiffs filed a letter dated November 21, 2019, in which they sought another conference with the Court or leave to file a formal motion to compel to address defendants' failure to respond to this Court's November 4, 2019 Order.  (Pls.' 11/21/19 Ltr.[9] at 1).  In their letter, plaintiffs noted that defendants had neither produced responses, nor had they asked for an extension of time; instead, counsel had failed to return any of plaintiffs' counsel's phone calls or emails.  Moreover, the sanctions ordered by Judge Amon remained unpaid.  (Id. at 1-2).  Accordingly, this Court issued an Order to Show Cause why sanctions should not be imposed pursuant to Fed. R. Civ. P. 37 for defendants' failure to comply with the Court's Order of November 4, 2019 and scheduled a hearing for December 16, 2019.[10]

On December 4, 2019, defendants' counsel submitted a letter indicating that his discovery responses were overdue because "I have gotten no cooperation from my clients despite my efforts."  (Defs.' 12/14/19 Ltr.[11] at 1).  In the letter, counsel indicated that he was seeking to file a motion to withdraw.  (Id.)  However, he did not request an adjournment of the show cause hearing, nor was there any mention of the outstanding sanctions award.  (Id.)

---

[9] Citations to "Pls.' 11/21/19 Ltr." refer to the plaintiffs' letter, dated November 21, 2019, ECF No. 76.

[10] See Electronic Order dated 11/25/19.

[11] Citations to "Defs.' 12/4/19 Ltr." refer to the letter submitted by defendants' counsel, dated December 4, 2019, ECF No. 77.

On December 16, 2019, the Court held the Show Cause hearing.  Plaintiffs' counsel

appeared before the Court, but counsel for defendants, Mr. Abrahamsen, failed to appear.  On

that same date, this Court issued an Order that sanctions would be imposed for counsel's failure

to appear, and Ordered Mr. Abrahamsen to submit a copy of the Order to his clients.  (See

12/16/19 Order[12] at 1).  Thereafter, plaintiffs' counsel submitted their Motion for Sanctions

Pursuant to Fed. R. Civ. P. 11 and 37.

DISCUSSION

I.     Legal Standards for Sanctions under Rule 37 of the Federal Rules

It is clear that sanctions may be imposed upon a party or counsel who deliberately fails to

comply with a court order.  See, e.g., United States v. Local 1804-1, Int'l Longshoremen's Ass'n,

44 F.3d 1091, 1096 (2d Cir. 1995); Drywall Tapers, Local 1974 v. Local 530, 889 F.2d 389, 394

(2d Cir. 1989), cert. denied, 494 U.S. 1030 (1990).  Rule 37 of the Federal Rules of Civil

Procedure is the primary, though not the exclusive, mechanism for enforcing a court's discovery

orders.  See World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 158

(2d Cir. 2012).  The Rule provides in relevant part that "if a party or a party's officer, director, or

managing agent . . . fails to obey an order to provide or permit discovery, including an order

under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just

orders."  Fed. R. Civ. P. 37(b)(2)(A).  In Update Art, Inc. v. Modiin Publ'g, Ltd., the Second

Circuit described the three purposes behind sanctions under Rule 37:

> First, they ensure that a party will not benefit from its own failure
> to comply. Second, they are specific deterrents and seek to obtain
> compliance with the particular order issued. Third, they are

---

[12] ECF No. 78.

                intended to serve a general deterrent effect on the case at hand and
                on other litigation, provided that the party against whom they are
                imposed was in some sense at fault.

843 F.2d 67, 71 (2d Cir. 1988) (citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976) (per curiam)).  See also Southern New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 149 (2d Cir. 2010) (quoting Update Art, Inc. v. Modiin Pub'g, Ltd., 843 F.2d at 71); Cine Forty-Second St. Theatre Co. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979).  As the court in Baba v. Japan Travel Bureau Int'l, Inc., noted: "'[A]ll litigants . . . have an obligation to comply with court orders.  When they flout that obligation[,] they . . . must suffer the consequences of their actions.'"  111 F.3d 2, 5 (2d Cir. 1997) (quoting McDonald v. Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988)).

       The Rule lists seven possible sanctions, including "striking pleadings in whole or in part," "rendering a default judgment against the disobedient party," and "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."  Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi), (vii).  In addition, the Rule provides that the court may issue an order that certain designated facts be taken as established in accordance with the claim of the party obtaining the order, Fed. R. Civ. P. 37(b)(2)(A)(i); see Santrayll v. Burrell, No. 91 CV 3166, 1998 WL 60926, at *3 (S.D.N.Y. Jan. 21, 1998), or may issue an order "prohibiting the disobedient party from . . . introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A)(ii); accord Kang v. Lee, No. 96 CV 1145, 1997 WL 669787, at * 3 (S.D.N.Y. Oct. 27, 1997).

In lieu of or in addition to these sanctions, the Rule requires that the court order the disobedient party, its attorney, or both to pay "the reasonable expenses, including attorney's fees," caused by the failure to comply, unless the court finds the failure "substantially justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Indeed, courts have awarded attorney's fees and costs where sanctions were appropriate but where the court found that the sanctioned party's conduct did not rise to a level that would warrant the more severe sanctions of dismissal or default. See, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, 763-64 (1980). The listed sanctions are non-exclusive, and the Rule explicitly contemplates that courts will order other sanctions so long as they are just. See Local Union No. 40 of the Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Car-Win Constr., Inc., 88 F. Supp. 3d 250, 262 (S.D.N.Y. 2015).

An order requiring a party to comply with its discovery obligations or with another party's discovery requests is a necessary predicate to sanctions under Rule 37(b). See, e.g., Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1364 (2d Cir. 1991) (observing that "there must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)"). An order enforceable under Rule 37(b) need not, however, have been issued under a particular rule, so long as its effect was to require a party "to provide or permit discovery." See Fed. R. Civ. P. 37(b)(2)(A); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 CV 318, 2017 WL 3671036, at *18 (S.D.N.Y. July 18, 2017) (collecting authority). An order need not be written to be enforceable under the Rule. See Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 388 (2d Cir. 1981). Even in the absence of a court order, Rule 37

provides for sanctions where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)."  Fed. R. Civ. P. 37(c)(1).

    A.  <u>Inherent Power of the Court</u>

    In addition, where a court has not issued an explicit discovery order and there has not been a qualifying failure to disclose under Rule 37(c), "a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."  <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 106-07 (2d Cir. 2002); <u>see generally Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991) (explaining that "[i]t has long been understood that '[c]ertain implied powers must necessarily result to our [c]ourts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a [c]ourt, because they are necessary to the exercise of all others'") (quoting <u>United States v. Hudson</u>, 11 U.S. (7 Cranch) 32, 34 (1812)).  Indeed, "[w]here exercise of inherent power is necessary to remedy abuse of the judicial process, it matters not whether there might be another source of authority that could address the same issue."  <u>CAT3, LLC v. Black Lineage, Inc.</u>, 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016); <u>accord</u> <u>Southern New England Tel. Co. v. Global NAPs Inc.</u>, 624 F.3d at 144.

    B.  <u>Considerations in Determining the Appropriate Sanction</u>

    A district court has broad discretion to sanction a party for discovery abuses and other litigation misconduct, whether exercising its inherent power or acting pursuant to the Federal Rules of Civil Procedure.  <u>Gao v. Perfect Team Corp.</u>, No. 10 CV 1637, 2014 WL 2465589, at *4 (E.D.N.Y. May 30, 2014); <u>Curcio v. Roosevelt Union Free School Dist.</u>, 283 F.R.D. 102, 107 (E.D.N.Y. 2012); <u>see</u> <u>World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.</u>, 694 F.3d

at 159 (explaining that "imposing sanctions pursuant to Rule 37 is within the discretion of the district court and a decision to dismiss an action [or enter default judgment] for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion") (quotations and citations omitted).

Courts are guided by the prophylactic, punitive, and remedial rationales in the exercise of their discretion to impose an appropriate sanction. The breadth of the court's discretion to select a sanction appropriate to the circumstances of a particular case reflects the "considerable deference [afforded] to the district court's familiarity with the proceedings." Bhagwanani v. Brown, 665 F. App'x 41, 43 (2d Cir. 2016) (quoting Friends of Animals, Inc. v. U.S. Surgical Corp., 131 F.3d 332, 334 (2d Cir. 1997)).

The court's inquiry in deciding whether to impose less severe sanctions, such as fines and cost-shifting, focuses primarily on the misconduct of the party to be sanctioned. Nycomed U.S., Inc. v. Glenmark Generics Ltd., No. 08 CV 5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010). Additional considerations govern the decision to impose harsher sanctions, such as an order of preclusion, the imposition of an adverse inference, dismissing the case, or entering a default judgment. See id.

Entering a default judgment, like striking a pleading or dismissing a case, "is a 'drastic remedy' generally to be used only when the district judge has considered lesser alternatives." Southern New England Tel. Co. v. Global NAPs Inc., 624 F.3d at 144. "Discovery orders are meant to be followed," Bambu Sales, Inc. v. Ozark Trading, Inc., 58 F.3d 849, 853 (2d Cir. 1995), and thus the harshness of such measures "is justified if the district court finds that the failure to comply with discovery orders was due to 'willfulness, bad faith, or any fault of the

party sanctioned.'"  Southern New England Tel. Co. v. Global NAPs Inc., 624 F.3d at 144

(quoting Salahuddin v. Harris, 782 F.2d 1127, 1132 (2d Cir. 1986)).  Indeed, the availability of

these most severe sanctions in appropriate cases is essential to the efficient functioning of the

courts, especially if the Federal Rules of Civil Procedure are to achieve their stated goal of

"secur[ing] the just, speedy, and inexpensive determination of every action and proceeding."

Fed. R. Civ. P. 1; see Valentine v. Museum of Modern Art, 29 F.3d 47, 49-50 (2d Cir. 1994)

(quoting National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. at 643).  Thus,

even long before the widespread availability of electronically stored information caused

exponential increases in the complexities of litigation, the Second Circuit admonished that "in

this day of burgeoning, costly and protracted litigation[,] courts should not shrink from imposing

harsh sanctions where . . . they are clearly warranted."  Jones v. Niagara Frontier Transp. Auth.,

836 F.2d 731, 734-35 (2d Cir. 1987) (quoting Cine Forty-Second Street Theatre Corp. v. Allied

Artists Pictures Corp., 602 F.2d at 1068).

        C.  Factors to Consider

        Courts generally consider the following factors in determining whether to exercise their

discretion to enter default judgment or to impose another dispositive sanction:  "(1) the

willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser

sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant

party had been warned of the consequences of non-compliance."  Agiwal v. Mid Island Mortg.

Corp., 555 F.3d 298, 302 (2d Cir. 2009) (internal citations and quotations omitted).

        In addition to the four Agiwal factors, courts also regularly consider the extent of any

prejudice to the party moving for sanctions.  In doing so, however, courts must be mindful that

"real prejudice to a litigant may serve as a compelling consideration in support of dispositive relief," but that "a lack of prejudice should not be given significant weight in the overall analysis." Local Union No. 40 v. Car-Win Constr., Inc., 88 F. Supp. 3d at 263.  The absence of prejudice is given little weight, even though its presence tilts the scales heavily in favor of sanctions, because both the Second Circuit and the Supreme Court "have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions[.]  Although *one* purpose of Rule 37 sanctions may in some cases be to protect other parties to the litigation from prejudice resulting from noncompliance with discovery obligations, Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants." Southern New England Tel. Co v. Global NAPs Inc., 624 F.3d at 148-49 (citations omitted) (emphasis in original); see Local Union No. 40 of the Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Car-Win Constr., Inc., 88 F. Supp. 3d at 263.

Although these enumerated factors provide useful guidance, they are not exclusive.  No single factor controls, and it is not an abuse of discretion for a district court to order a dispositive sanction even when not every factor weighs against the party to be sanctioned.  Southern New England Tel. Co v. Global NAPs Inc., 624 F.3d at 144.  "Sanctions must be weighed in light of the full record in the case." Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d at 1068 (citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. at 642).  It is up to the trial court to determine on a case-by-case basis whether a dispositive sanction is appropriate in light of the court's familiarity with the proceedings, the prophylactic, punitive, and remedial purposes of sanctions, and the paramount requirement under Rule 1 and Rule 37 that any order issued must be just.

II.   Analysis of Plaintiffs' Request for Sanctions Pursuant to Rule 37

Plaintiffs contend that defendants by and through counsel have engaged in "obstructionist tactics" from the beginning of the case through the present:   1) by filing meritless RICO counterclaims, all of which were dismissed, 2) by filing a frivolous motion to compel arbitration, for which counsel was sanctioned, 3) by failing to pay the sanctions by June 19, 2019 in accordance with the deadline imposed by the District Court, and by continuing to fail to pay, 4) by refusing to frame a discovery plan or respond to discovery demands filed by plaintiffs, 5) by failing to comply with this Court's November 4, 2019 ordering responses to discovery by November 19, 2019, and 6) by failing to obey this Court's November 4, 2019 Order to appear at the show cause hearing held on December 16, 2019.  (Pls.' Mem.[13] at 2.)

A.   Failure to Pay Sanctions Award

Plaintiffs argue that defendants and their counsel should be sanctioned for disobeying the District Court's June 4, 2019 Order imposing sanctions in the amount of $11,784.19 upon defendants' counsel.  (Pls.' Mem. at 5.)  According to the Affirmation of John M. Harras, Esq., counsel for plaintiffs ("Harras Aff."[14]), defendants' counsel was Ordered to pay the amount by June 19, 2019, and Harras tried to contact Abrahamsen as the deadline approached but received no response.  (Harras Aff. ¶ 2.)  On July 29, 2019, counsel sent a check for $5,892.09, representing partial payment, and promising in a letter to this Court that he intended to pay the remainder within 30 days.  (Id. ¶ 3; see also Defs.' 7/29/19 Ltr.[15])  Counsel for plaintiffs sent

---

[13] Citations to "Pls.' Mem." refer to the Memorandum of Law in Support of Plaintiffs' Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 and Fed. R. Civ. R. 37, ECF No. 79.

[14] Filed December 18, 2019, ECF No. 80.

[15] ECF No. 66.

15

Mr. Abrahamsen a letter dated July 31, 2019, indicating that plaintiffs did not accept the check as accord and satisfaction and that they were expecting the balance to be paid as soon as possible. (Harras Aff. ¶ 4). As of the date of the Harras Affirmation of December 18, 2019, Abrahamsen still had not paid the balance of the sanction award. (Id. ¶ 5).

Plaintiffs argue that the District Court's Order to pay $11,784.19 by June 19, 2019 is clear and unambiguous; and the proof of non-compliance is clear and unambiguous. (Pls.' Mem. at 5). Moreover, given that plaintiffs' counsel informed the contemnor, Mr. Abrahamsen, that he was not in compliance and Abrahamsen refused to inform plaintiffs of the status of the payment, and he still had not paid for over 196 days, plaintiffs argue that he was not reasonably diligent in attempting to comply. (Id.) Accordingly, based on Abrahamsen's clear disobedience of the District Court's Order, the plaintiffs request that the Court impose sanctions pursuant to Rule 37. (Id. (citing Southern New England Tel. Co. v. Global NAPs Inc., 624 F.3d at 144 (citing EEOC v. Local 638, 81 F.3d 1162, 1171 (2d Cir. 1996)))).

 B. Failure to Frame a Discovery Plan and Failure to Respond to Discovery

Plaintiffs seek additional sanctions under Rule 37(f) for defendants' failure to participate in framing a discovery plan. (Pls.' Mem. at 6). See, e.g., Whalen v. CSX Transp., Inc., No. 13 CV 3784, 2016 WL 5723877, *25 (S.D.N.Y. Sept. 29, 2016) (ordering "payment of reasonable expenses for failure to participate in framing a discovery plan"). Among other things, courts have awarded counsel their attorney's fees incurred in preparing a motion to compel and other reasonable expenses for motion practice arising from a party's failure to participate in discovery. See, e.g., Panyanouvong v. Aphay, No. 14 CV 275, 2014 WL 2986507, *7 (W.D. Wash. 2014).

Plaintiffs argue that here defendants have failed to engage in any discussion concerning discovery, including setting a discovery schedule.  (Pls.' Mem. at 2).  Specifically, plaintiffs note that they tried contacting defendants' counsel on numerous occasions to confer on a discovery schedule, but he never responded.  (Harras Aff. ¶ 7).  Thus, plaintiffs submitted their own proposed schedule on July 8, 2019, which the Court adopted by Order dated July 12, 2019.  (Id. ¶¶ 8-9).

Plaintiffs further note that defendants failed to provide responses to plaintiffs' written discovery demands, which were served on July 31, 2019, with responses due August 30, 2019.  (Id. ¶¶ 10-11).  When plaintiffs inquired by email to defendants' counsel on September 5, 2019 as to the status of the defendants' responses, there was no response.  (Id. ¶ 13).  Similarly, calls to Mr. Abrahamsen about the status of discovery were never returned; Abrahamsen was "allegedly out of the office, usually 'at Court' or 'at a Court-Ordered Mediation.'"  (Id. ¶ 14).

Even when plaintiffs filed a motion to compel discovery in September 2019, defendants' counsel filed an untimely response, which did not address the discovery issues, but simply argued the merits of the case, which plaintiffs contend "contained factual misrepresentations, basic misunderstandings of the issues in this case, and a wholesale disregarding of the alter ego/successor claims in this case."  (Id. ¶¶ 15-17).  (See discussion infra at 20 et seq.).

C.  Violations of the Court's November 4, and November 25, 2019 Orders

When the Court held a conference on November 4, 2019 to address why defendants had still not responded to discovery requests served in July, Mr. Abrahamsen indicated that he had

had health issues that prevented him from responding.[16]  (Harras Aff. ¶ 24).  Based on that

representation, the Court asked plaintiffs' counsel to withdraw their motion to compel and

extended defendants' time to respond to the discovery requests that had been outstanding since

July, ordering responses by November 18, 2019.  (Id. ¶ 24).  When there was no response on

November 18, 2019, plaintiffs' counsel contacted Abrahamsen by email on November 19, 2019

and then by telephone on November 20, 2019.  (Id. ¶¶ 26-28, Exs. E, F[17]).  According to

plaintiffs' counsel, Abrahamsen never responded either by email or telephone.  (Id. ¶ 29).

Mr. Abrahamsen also ignored this Court's Order of November 25, 2019, in which this

Court directed defendants "TO SHOW CAUSE" why sanctions should not be imposed under

Rule 37 for failing to comply with the November 4, 2019 Order.  (Id. ¶ 31).  Instead of appearing

at the December 16, 2019 hearing as Ordered, Abrahamsen submitted a letter, dated December 4,

2019, stating that defendants were not cooperating with him and that he was seeking to withdraw

as counsel.  (Id. ¶¶ 32, 35; Defs.' 12/4/19 Ltr.).  Abrahamsen did not request an adjournment of

the show cause hearing, nor did he file a formal motion to withdraw at that time.[18]  Although

plaintiffs' counsel appeared for the show cause hearing, Abrahamsen failed to appear.  The Court

refrained from engaging in an ex parte discussion, but invited plaintiffs' counsel to file a motion

for sanctions.

---

[16] Plaintiffs' counsel notes that prior to this time, Abrahamsen had never mentioned his
health as an issue.  (Pls.' Mem. at 8).

[17] Exhibit E is an email from Harras to Abrahamsen dated November 19, 2019, attached
to the Harras Affidavit at ECF No. 80-5.  Exhibit F is an email from Harras to Abrahamsen dated
November 20, 2019, in which Harras asks Abrahamsen to return his call, attached to the Harras
Affidavit at ECF No. 80-6.

[18] Mr. Abrahamsen only filed a notice of motion to withdraw on January 7, 2020, after the
Court Ordered him to respond to plaintiffs' Motion for Sanctions.  (See Abrahamsen Notice of
Motion to Withdraw as Counsel, filed January 7, 2020, ECF No. 82-1).

Plaintiffs argue that Abrahamsen's disobedience of the Court's November 4, 2019 Order is sanctionable under Rule 37(b)(2)(A), as well as under the Court's inherent power to hold parties and counsel in contempt.  (Pls.' Mem. at 9).  Since defendants have never responded to any of plaintiffs' discovery requests and have willfully disobeyed this Court's November 4 and November 25 Orders, plaintiffs seek sanctions.  (Id. at 9, 10).  Plaintiff argues that because defendants, through counsel, have engaged in seven distinct sanctionable acts, the Court should impose "harsh sanctions."  (Id. at 12).  Accordingly, under Rule 37(b)(2)(A)(iii), and 37(b)(2)(A)(iv), plaintiffs seek an Order striking defendants' Answer and entering a default against them.  (Id. at 13).

In response, Mr. Abrahamsen represents that he has been unable to comply with plaintiffs' discovery requests because "[p]roper responses to the discovery demands require the cooperation of [his] clients," which his clients are refusing to provide.  (Defs.' Opp.[19] ¶ 4). Abrahamsen asserts that he has been unable to contact his clients and that his clients are "currently in default for a large sum in their financial responsibilities to [his] law firm."  (Id.) Counsel also states that his clients' outstanding financial responsibilities to the firm "greatly exceed the sanctions imposed thus far by the Court."  (Id. ¶ 9).  Plaintiffs argue that, based on defendants' "recalcitrant dismissiveness" for this Court and for the Federal Rules of Civil Procedure, the Court should impose the harshest sanction available on the defendants – entering a default judgment against the defendants.  (Pls.' Mem. at 12-13).

---

[19] Citations to "Defs.' Opp." refer to defendants' Certification of Counsel in Opposition to Motion and in Support of Motion to Withdraw as Counsel for the Defendants, filed January 14, 2020, ECF No. 81.

Considering the <u>Agiwal</u> factors for entering a default judgment (<u>see</u> <u>Agiwal v. Mid Island</u> <u>Mortg. Corp.</u> 555 F.3d at 302), the Court agrees that a default judgment may be warranted in this case.  First, the defendants – as evidenced by Mr. Abrahamsen's own representations – have time and again willfully flouted this Court's orders and refused to proceed with discovery.  Second, as the monetary sanctions remain unpaid, and as Mr. Abrahamson represents that defendants refuse not only to move forward with discovery but also have not paid for his services, the Court is not convinced that additional monetary sanctions would deter defendants' behavior.  Third, the defendants have refused to cooperate in this case since at least June 2019, when counsel missed the deadline to pay the Rule 11 sanctions.  Finally, the Court has warned the defendants on multiple occasions that their noncompliance would result in sanctions.

Given defendants' conduct in stonewalling discovery, the Court does not see how this case can proceed.  The Court respectfully recommends that the District Court grant Mr. Abrahamsen's motion to withdraw, subject to his payment of the outstanding $5,892.10 owed as Ordered by the Court on June 4, 2019.  It is further recommended that defendants be given two weeks to secure new counsel.  If the defendants fail to obtain new counsel within two weeks of this Report and Recommendation, or the Court receives a status letter from plaintiffs' counsel by April 1, 2020 reporting that defendants' new counsel is still not engaging in productive discovery discussions, it is further recommended that the District Court strike defendants' answer, and enter a default against them.

III.   <u>Attorney's Fees and Costs</u>

Plaintiffs also seek the imposition of a monetary sanction equal to plaintiffs' costs and

attorney's fees incurred as a result of defendants' sanctionable conduct.  Plaintiffs request an

award of $10,270 in legal fees incurred from August 30, 2019, when the discovery responses

were first due, through the filing of the instant motion.  (Pls.' Mem. at 9).  Rule 37(b)(2)(C)

provides for an award of "reasonable expenses, including attorney's fees" caused by the failure to

provide discovery, which can be awarded in addition to the other sanctions.  <u>See</u> <u>Local Union</u>

<u>No. 40 of the Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Car-Win Constr.,</u>

<u>Inc.</u>, 88 F. Supp. 3d at 262.

"The district court retains discretion to determine . . . what constitutes a reasonable fee."

<u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011) (quoting <u>LeBlanc-Sternberg v.</u>

<u>Fletcher</u>, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a

reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively

reasonable fee."  <u>Dunn v. Advanced Credit Recovery, Inc.</u>, No. 11 CV 4023, 2012 WL 676350,

at *5 (S.D.N.Y. Mar. 1, 2012) (citing <u>Perdue v. Kenny A.</u>, 559 U.S. 542, 551-52 (2010)), <u>report</u>

<u>and recommendation adopted</u> 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); <u>see also</u> <u>Millea v.</u>

<u>Metro-North R.R. Co.</u>, 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the

lodestar "as a starting point"); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of</u>

<u>Albany</u>, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours

reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate."

Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (internal citations and quotation marks omitted), report and recommendation adopted 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (quoting Perdue v. Kenny A., 559 U.S. at 553). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Id. at 167 (quoting Perdue v. Kenny A., 559 U.S. at 554); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." Millea v. Metro-North R.R. Co., 658 F.3d at 167. As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[20] 2012 WL 676350, at *5, n.8.

_____

[20] The Johnson factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the

The burden is on the party moving for attorney's fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged. See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "'[a] district court's choice of rates [is] well within [its] discretion'") (alterations in original) (quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994), superseded in statute on other grounds as recognized in Mhany Mgmt., Inc. v. County of Nassau, 819 F.3d 581 (2d Cir. 2016) (internal quotation marks omitted). To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984).

The Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits . . . .'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted) (holding that when awarding attorney's fees, there is a

---

preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds, Blanchard v. Bergeron, 489 U.S. 87 (1989).

presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located).  Indeed, as the court in <u>Simmons</u> noted, in determining the "presumptively reasonable fee," courts should consider what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client . . . wishes to spend the minimum necessary to litigate the case effectively."  <u>Id.</u> (citations and internal quotation marks omitted); <u>see also</u> <u>Cook v. First Revenue Assurance, LLC</u>, No. 10 CV 5721, 2012 WL 272894, at *3 (E.D.N.Y. Jan. 9, 2012), <u>report and recommendation adopted</u>, 2012 WL 272891 (E.D.N.Y. Jan. 30, 2012).

Plaintiffs' counsel, Mr. Harras, indicates that he graduated from law school in 2015, and that his firm bills his time at $225 per hour.  (Harras Aff. ¶ 38).  He has submitted an invoice detailing the hours spent on this matter, as required by <u>New York State Association for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983).  (<u>See</u> Harras Aff., Attachment 7).  Plaintiffs seek fees for a total of 47.2 hours expended by Mr. Harras in pursuing discovery in this matter, including preparing the motion to compel, the motion for sanctions, and the numerous attempts made to obtain defendants' counsel's voluntary compliance with his obligations under the Rules.  (<u>Id.</u>)  Mr. Harras also seeks fees for 2.8 hours of legal assistants' time, billed at a rate of $100 per hour.  (<u>See</u> <u>id.</u> ¶ 38; <u>see also</u> <u>id.</u>, Attachment 7).

Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with ERISA cases, the Court respectfully recommends a finding that the rates charged here are reasonable in light of the rates normally charged in the Eastern District of New York.  <u>See, e.g.</u>, <u>Trustees of Local 522 Pension Fund v. Consolidated Cos.</u>, No. 17 CV 1991, 2018 WL 2078117, at *9-10 (E.D.N.Y. Feb. 6, 2018) (approving rates of $350 for partners and $300 for experienced associates), <u>report and recommendation adopted</u>, 2018 WL 1521775

(E.D.N.Y. Mar. 27, 2018); Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Co., 270 F. Supp. 3d 593, 623 (E.D.N.Y. 2017) (approving rates of $350 and $300 for partners and $200 for an associate in ERISA default action); Trustees of Local 522 Pension Fund v. Bayway Lumber and Home Center, No. 16 CV 5286, 2017 WL 9511077, at *6 (E.D.N.Y. July 25, 2017) (recommending rates of $325 and $300, respectively, for partners in ERISA default), report and recommendation adopted, 2017 WL 4075182 (E.D.N.Y. Sept. 14, 2017); Bakery & Confectionary Union & Indus. Pension Fund v. Mt. Rose Ravioli & Macaroni Co., Inc., No. 09 CV 3068, 2011 WL 6130975, at *5 (E.D.N.Y. Nov. 10, 2011) (finding a partner's hourly rate of $330 to be reasonable for ERISA litigation); LaBarbera v. Ovan Constr., Inc., No. 06 CV 2867, 2011 WL 5822629 at *5 (E.D.N.Y. Sept. 20, 2011) (approving rates of $390 per hour for work by partner and $280 per hour for work by associate in ERISA litigation, including summary judgment motion), report and recommendation adopted, 2011 WL 5825785 (E.D.N.Y. Nov. 16, 2011); Finkel v. Fred Todino & Sons, Inc., No. 08 CV 4598, 2010 WL 4646493, at *6 (E.D.N.Y. Oct. 8, 2010) (approving rate of $370 per hour for partner and $275 per hour for associate in ERISA withdrawal liability case, but noting that these rates were on the "higher end" for the Eastern District); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a partner's rate of $390 per hour and associate's rate of $280 per hour reasonable in ERISA litigation).

Moreover, the Court respectfully recommends a finding that the number of hours billed in connection with these discovery matters are reasonable.  C.f. LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  Based on

the records submitted to the Court, counsel's request for a total of 47.2 hours since August 31,

2019 is reasonable given the amount of work performed.

Accordingly, based on the hourly rates set forth above, and the number of hours billed on

this matter, the Court respectfully recommends that plaintiffs be awarded $10,270.00 in

attorney's fees, in addition to the other sanctions recommended.[21]

IV.     Plaintiffs' Motion for Rule 11 Sanctions

In addition to seeking sanctions under Rule 37 for defendants' failure to engage in

discovery and failure to comply with this Court's Orders, plaintiffs seek to have the Court impose

sanctions under Fed. R. Civ. P. 11 for the misrepresentations and falsehoods made to the court by

defendants' counsel in responding to the plaintiffs' September motion to compel.  In the Second

Circuit, it is well established that "the decision whether to impose sanctions is not mandatory, but

rather is a matter for the court's discretion."  Lorber v. Winston, 993 F. Supp. 2d 250, 253

(E.D.N.Y. 2014) (citing Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004)).  This

Circuit has held that orders granting Rule 11 sanctions should be "made with restraint."  Schlaifer

Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999).

Federal Rule of Civil Procedure 11 focuses on preventing specific enumerated types of

misconduct by litigants or their counsel.  Under Rule 11(b), an attorney who presents "a

pleading, written motion, or other paper" to the court certifies that a reasonable inquiry was

performed under the circumstances and "that to the best of the [attorney's] knowledge,

information, and belief," the pleading:

---

[21] Though plaintiffs' counsel also indicates that he seeks costs, counsel does not specify
an amount for costs or what those costs would be.  The Court thus infers that counsel's references
to costs are interchangeable for the attorney's fees sought.

> (1) . . . is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or . . . are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  The Supreme Court has held that the Rule's central purpose "is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990), superseded on other grounds as recognized in De La Fuente v. DCI Telecomms., Inc., 259 F. Supp. 2d 250, 257 (S.D.N.Y. 2003).  Thus, "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose."  Id. (internal quotation omitted).  In light of the relatively narrow scope of Rule 11, sanctions should be limited to what suffices to deter repetition of the such conduct.  Margo v. Weiss, 213 F.3d 55, 64 (2d Cir. 2000) (citing Fed. R. Civ. P. 11(c)).

Since the "inquiry must be 'reasonable under the circumstances,' liability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney . . . signing the papers."  In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig., 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009)); Lorber v. Winston, 993 F. Supp. 2d at 253  (noting that in general, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness" (quoting Margo v. Weiss, 213 F.3d at 65)).  This inquiry is "not based on the subjective beliefs of the

person making the statement."  <u>Storey v. Cello Holdings, L.L.C.</u>, 347 F.3d 370, 387 (2d Cir. 2003).

Whether sanctions under Rule 11 are appropriate is "distinct from the underlying merits of a claim."  <u>East Gluck Corp. v. Rothenhaus</u>, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (citing <u>Abdelhamid v. Altria Group, Inc.</u>, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) (holding that "[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable[,] courts must resolve all doubts in favor of the signer of the pleading" (internal citations and quotation marks omitted))); <u>see also</u> <u>Lawrence v. Wilder Richman Sec. Corp.</u>, 467 F. Supp. 2d 228, 233 (D. Conn. 2006) (quoting <u>Securities Indus. Ass'n v. Clarke</u>, 898 F.2d 318, 321 (2d Cir. 1990)) (observing that such "[a] distinction [is] drawn between a position which is merely losing, and one which is both losing and sanctionable").  Further, the Advisory Committee Notes to Rule 11 provide that a Rule 11 motion should not be used "to test the legal sufficiency or efficacy of allegations in the pleadings," since other motions "are available for those purposes."  <u>See</u> <u>East Gluck Corp. v. Rothenhaus</u>, 252 F.R.D. at 179 (quoting Fed. R. Civ. P. 11 Advisory Committee's note).  Thus, "not all unsuccessful legal arguments are frivolous or warrant sanction."  <u>Mareno v. Rowe</u>, 910 F.2d 1043, 1047 (2d Cir. 1990).

In this case, plaintiffs seek Rule 11 sanctions for defendants' and counsel's conduct in filing the frivolous response to the motion to compel.  Among examples of the misrepresentations in the defendants' response, plaintiffs note that counsel claimed "'defendants in this case were never parties to the CBA upon which Plaintiff[s] predicate[] [their] claims.'"  (Harras Aff. ¶ 18 (citing Abrahamsen's Certification in Opposition to Plaintiffs' Motion to Compel ¶ 8)).  Plaintiffs assert that counsel could not have conducted any reasonable inquiry before making this

representation to the Court because, had counsel done so, he would have seen that defendant Elite

Terrazzo had signed the CBA on January 15, 2007.  (Id. ¶ 19, Ex. B[22]).

More critical to the Court's consideration of the sanctions motion is defendants' letter,

dated June 17, 2015, written by Mr. Abrahamsen, in which he states that he represents Elite

Terrazzo, "who executed a collective bargaining agreement making Marble Terrazzo and

Specialty Contractors [Employer Representative] its exclusive bargaining representative" in

resolving disputes between Elite Terrazzo and the Union.  (Id. ¶ 21, Ex. D;[23] see also id. ¶ 20,

Ex. C[24]).  The June 17, 2015 letter also indicates that Elite was filing a grievance "in accordance

with the collective bargaining agreement."  (Ex. C at 3).  Despite these statements written by

counsel, Abrahamsen represented to the Court that "defendants in this case were never parties to

the CBA," and asserted that as a result, plaintiffs had no basis to bring the lawsuit or to request

discovery from the defendants.

Although Rule 11 "does not apply to disclosures and discovery requests, responses,

objections, and motions under Rule 26 through 37," Fed. R. Civ. P. Rule 11(d), because Rules 26

and 37 govern such conduct, some courts have imposed sanctions under Rule 11 where the

conduct of the attorney was not contemplated by or subject to sanctions under the other rules.

See, e.g., Shim-Larkin v. City of New York, No. 16 CV 6099, 2019 WL 5199419, at *10

---

[22] Exhibit B to the Harras Affidavit is the signature page of the CBA, including the signature of Elite Terrazzo's president, ECF No. 80-2.

[23] Exhibit D to the Harras Affidavit is a June 17, 2015 letter from Abrahamsen regarding the collective bargaining agreement, ECF No. 80-4.

[24] Exhibit C to the Harras Affidavit is a June 16, 2015 letter from Abrahamsen, in which Abrahamsen stated that Elite Terrazzo had "signed an agreement allowing the Marble Terrazzo and Specialty Contractors Association to be its exclusive bargaining representative" and conceding that the Association "is party to a collective bargaining agreement with [the Union]," ECF No. 80-3.

(S.D.N.Y. Sept. 16, 2019) (imposing Rule 11 sanctions where an attorney's certification in response to a motion for sanctions "repeat[ed] and rel[ied] on [a] debunked factual contention" and the court found that the conduct was not contemplated under Rule 26 or 37); see also Ultegra LLC v. Mystic Fire Dist., 676 F. App'x 33, 36 (2d Cir. 2017) (upholding the imposition of Rule 11 sanctions where the defendant improperly delayed trial by misrepresenting her health status).

Here, the Court believes it unnecessary to determine if Rule 11 sanctions would be available for Abrahamsen's conduct in filing a frivolous response to the plaintiffs' motion to compel.  Instead, the Court respectfully recommends that the award of attorney's fees and costs incurred by plaintiffs' counsel in responding to the motion is a sufficient sanction in this case.

However, the Court notes that this is not the only case where Abrahamsen has faced sanctions in this Circuit.  (See 6/4/19 Order at 12, n. 4 (noting that Abrahamsen was the subject of sanctions in Mintz & Gold LLP v. Daibes, No. 15 CV 1218, 2015 WL 2130935, (S.D.N.Y. May 6, 2015), aff'd, 643 F. App'x 35 (2d Cir. 2016))).  In Mintz & Gold LLP v. Daibes, the Honorable Paul A. Englemayer expressed his judgment that the $10,000 sanction issued in that case against Mr. Abrahamsen was "sufficient, but no greater than necessary, to deter similar misconduct" in the future.  Mintz & Gold LLP v. Daibes, 2015 WL 2130935, at *13.  The Court expresses disappointment that previous sanctions have, alas, proved insufficient to deter Abrahamsen's conduct, and hope that his future practice will rise to the level expected of attorneys practicing in this Circuit.

V.     Defendants' Motion for Rule 11 Sanctions

Counsel for defendants argues that Rule 11 sanctions should be imposed on plaintiffs'

counsel, for filing a "frivolous" lawsuit and for counsel's attempt to apply Rule 11 to a discovery

dispute.  (Defs.' 10/31/19 Ltr. at 3).  However, defendants cite no caselaw or other authority that

would justify imposing sanctions on plaintiffs' counsel under these circumstances.  Defendants

make no argument to establish the required showing that plaintiffs' counsel has acted in a manner

that is objectively unreasonable.  See In re Australia & New Zealand Banking Grp. Ltd. Sec.

Litig., 712 F. Supp. 2d at 263.  Nor have defendants explained why their argument regarding the

alleged frivolity of plaintiffs' claims supports the imposition of Rule 11 sanctions, the

determination of which is "distinct from the underlying merits of a claim."  East Gluck Corp. v.

Rothenhaus, 252 F.R.D. at 179.  Neither do defendants explain or support their conclusory

statement that plaintiffs' seeking of Rule 11 sanctions against counsel for defendants here is itself

a sanctionable act.  Accordingly, the Court finds no Rule 11 violation on the part of plaintiffs'

counsel, and thus respectfully recommends denial of defendants' motion for sanctions.  See Perez

v. Posse Comitatus, 373 F.3d at 324.

CONCLUSION

For the reasons given above, the Court respectfully recommends that the District Court

grant Mr. Abrahamsen's motion to withdraw subject to his payment of the outstanding $5,892.10

owed as Ordered by the Court on June 4, 2019.  The Court further recommends that the District

Court issue an Order stating that defendants are to obtain new counsel within two weeks of this

Report and Recommendation, and that if the defendants fail to do so, or if the Court receives a

status letter from plaintiffs' counsel by April 1, 2020 reporting that defendants' new counsel is

31

not engaging in productive discovery discussions, the District Court will strike defendants'

answer, and enter a default against them.  Finally, the Court recommends that plaintiffs be

awarded $10,270 in attorney's fees, in addition to the outstanding $5,892.10, all to be paid by

Mr. Abrahamsen.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v.

Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      February 20, 2020

          /s/ Cheryl L. Pollak
        Cheryl L. Pollak
        United States Magistrate Judge
        Eastern District of New York