UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TRUSTEES OF THE MOSAIC AND
TERRAZZO WELFARE, PENSION,
ANNUITY, AND VACATION FUNDS and
TRUSTEES OF THE BRICKLAYERS &
TROWEL TRADES INTERNATIONAL
PENSION FUND,

                          Plaintiffs,

           -against-

ELITE TERRAZZO FLOORING, INC. and
PICNIC WORLDWIDE LLC,

                       Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
18 CV 1471 (CBA) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On March 9, 2018, plaintiffs, Trustees of the Mosaic and Terrazzo Welfare, Pension,

Annuity and Vacation Funds, and Trustees of the Bricklayers & Trowel Trades International

Pension Fund ("plaintiffs" or the "Funds"), commenced this action against defendants Elite

Terrazzo Flooring, Inc. and Picnic Worldwide LLC ("defendants"), pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., and

Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C.

§ 185, to collect delinquent employer contributions owed to a group of employee benefit plans,

and for declaratory relief. (Compl.[1] ¶ 1).

On March 31, 2020, the Clerk of Court entered a default against defendants, and

thereafter, plaintiffs filed their motion for default judgment on April 28, 2020. On April 28,

---

[1] Citations to "Compl." refer to the Complaint filed on March 9, 2018, ECF No. 1.

2020, the Honorable Carol B. Amon referred the motion for default judgment to the undersigned to prepare a Report and Recommendation and, if necessary, to conduct an inquest.

For the reasons set forth below, the Court respectfully recommends that the Funds' motion for default judgment be granted in part and denied in part.

FACTUAL BACKGROUND

Plaintiffs, the Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds (the "Local Funds"), are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c).  (Compl. ¶ 4).  The Local Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(21), and they maintain an office at 45-34 Court Square, Long Island City, N.Y.[2]  (Id.)  Plaintiffs, Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "International Funds"), are also trustees of multiemployer labor-management trust funds and employee benefit plans within the meaning of ERISA.  (Id. ¶ 5).  The International Funds are located at 620 F Street N.W., Washington, D.C. (Id.)

According to the Complaint, at all relevant times, defendant Elite Terrazzo Flooring, Inc. ("Elite") was a New Jersey corporation, located at 185 5th Avenue, Paterson, N.J., and an employer within the meaning of ERISA.  (Id. ¶ 6).  Defendant Picnic Worldwide LLC ("Picnic Worldwide") is alleged to be a New Jersey corporation and an employer as defined in ERISA, located at 26 Overlook Avenue, North Haledon, N.J.  (Id. ¶ 7).

---

[2] The Court has jurisdiction over this action because the Local Funds are administered in this district.  (Compl. ¶ 3-4).  An ERISA action may be brought "in the district where the plan is administered."  29 U.S.C. § 1132(e)(2).

The Complaint alleges that at all times, Elite was a party to a collective bargaining agreement ("CBA") with the Mosaic, Terrazzo and Chemical Product Decorative Finisher Masons Workers Association Local No. 7 of New York, New Jersey & Vicinity of the International Union of Bricklayers and Allied Craftworkers (the "Union"), which required the remittance of contributions to the Funds on behalf of the covered employees. (Id. ¶¶ 8-11).

According to the Complaint, when Elite failed to timely remit contributions to the Funds for its employees' Covered Work, the parties entered into a Settlement Agreement in or around May 2015, whereby Elite and Elite's principal, Chris Picinic, agreed to pay the Funds the sum of $874,236.01 over approximately two and a half years.[3] (Id. ¶ 18). When Elite defaulted on the payments, the Funds obtained a judgment in state court on June 15, 2015, in the amount of $774,236.00, and on June 23, 2015, the Funds obtained a judgment in federal court for the same amount. (Id. ¶¶ 19-21). As of the date of the Complaint, plaintiffs allege that they continue to be owed $694,761.16. (Id. ¶ 22). Plaintiffs further allege that Elite owes contributions to the Funds for work performed during the period March 1, 2015 through June 7, 2015. (Id. ¶ 23).

Plaintiffs allege that Elite and Picnic Worldwide[4] are alter egos and/or successors/predecessors of each other with the same ownership, management, business purpose, operation, equipment, customers, and supervision. (Id. ¶ 25). Plaintiffs assert that by virtue of their status as alter egos, successors, and/or predecessors of each other, Elite and Picnic Worldwide are and have at all relevant times been bound by the CBA and are jointly and

---

[3] The settlement amount represented delinquent contributions owed to the Funds for the periods January 1, 2011 through December 31, 2012, and from September 2014 through February 2015, plus interest accrued on late payments of contributions covering the period January 1, 2013 through December 31, 2013. (Settlement Agreement, attached as Exhibit D to the Declaration of Rose Marie Toneatto ("Toneatto Decl."), ECF No. 91).

[4] Plaintiffs allege that Mr. Picinic operates and controls Picnic Worldwide. The spelling of the names differs slightly. (Compl. ¶¶ 25, 27-29).

severally liable for the contributions owed to the Funds, and for the amounts owed as a result of

the judgment.  (Id. ¶ 41).

## PROCEDURAL HISTORY

Following the filing of the Complaint, defendants filed an Answer that included

counterclaims against plaintiffs under the Racketeer Influenced Corrupt Organization ("RICO")

provisions of 18 U.S.C. § 1961 et seq., along with a third-party complaint, asserting claims

against Marble Terrazzo and Specialty Contractors Inc., William Zonca, Local 7 Mosaic &

Terrazzo and Chemical Product Finisher Mason Workers Association, and Michael Magnam.

(See Picnic Answer;[5] Elite Terrazzo Flooring Answer[6]).

On June 4, 2019, the Honorable Carol B. Amon, United States District Judge, granted

plaintiffs' motion to dismiss the RICO counterclaims and dismissed the third-party complaint as

well.  (ECF No. 63).  Also on June 4, 2019, Judge Amon denied the defendants' motion to

compel arbitration and granted the Funds' motion for sanctions based on defendants' counsel's

admission that he did not review the relevant caselaw before filing a frivolous motion to compel

arbitration.  (ECF No. 62).  The court Ordered defendants' counsel, Richard J. Abrahamsen,

Esq., to pay the Funds $11,784.19 within two weeks of the Order.  (6/4/19 Order[7] at 15).

On July 8, 2019, plaintiffs submitted a status letter in response to this Court's Order of

June 6, 2019.  In that letter, plaintiffs indicated that they had been unable to confer about a

---

[5] Citations to "Picnic Answer" refer to Picnic Worldwide, LLC's Answer, First Third-Party Complaint, and Counterclaim, filed May 29, 2018, ECF No. 10.

[6] Citations to "Elite Terrazzo Flooring Answer" refer to Elite Terrazzo Flooring Inc.'s Answer to Complaint, Trustees of Mosaic & Terrazzo, First Third-Party Complaint against All Parties, First Counterclaim against All Parties by Elite Terrazzo Flooring, Inc., filed May 29, 2018, ECF No. 10.

[7] Citations to "6/4/19 Order" refer to the Order of the Honorable Carol Bagley Amon imposing sanctions on Mr. Abrahamsen, filed June 5, 2019, ECF No. 62.

discovery schedule because they had not been able to reach defendants' counsel in the prior thirty days. (Pls.' 7/8/19 Ltr.[8] at 1). However, plaintiffs proposed their own discovery schedule with fact discovery to be completed by November 12, 2019. (Id.)

In that same July 8, 2019 letter, plaintiffs informed the Court that defendants' counsel had disobeyed Judge Amon's June 4, 2019 Order and had failed to pay the Funds $11,784.19 by the June 19, 2019 deadline the court had set. (Id. at 1-2). Based on defendants' counsel's failure to obey the court's Order and defendants' counsel's failure to return plaintiffs' emails and phone calls to discuss the matter, plaintiffs sought further sanctions pursuant to Fed. R. Civ. P. 37 for defendants' "brazen disobedience of the Court's Order." (Id. at 2 (citing Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP, No. 03 CV 5560, 2008 WL 5336700, at *10-11 (S.D.N.Y. Dec. 23, 2008))). Specifically, plaintiffs sought an Order holding defendants and their counsel, Mr. Abrahamsen, in civil contempt and awarding plaintiffs sanctions in the amount of $23,568.38, representing the full costs of plaintiffs' fees associated with the response to the motion to compel arbitration. (Id.)

In response, defendants' attorney, Mr. Abrahamsen, submitted a letter, dated July 29, 2019, indicating that he had suffered some health issues and had not been able financially to pay the sanctions as ordered by the District Court. (Defs.' 7/29/19 Ltr.[9] at 1). In the letter, counsel represented that he had paid half of the sanctions amount and intended to pay the balance "within 30 days." (Id.)

---

[8] Citations to "Pls.' 7/8/19 Ltr." refer to plaintiffs' Motion for Contempt, submitted by plaintiffs on July 8, 2019, ECF No. 65.

[9] Citations to "Defs.' 7/29/19 Ltr." refer to the letter submitted by Richard J. Abrahamsen, Esq., dated July 29, 2019. ECF No. 66.

On July 31, 2019, plaintiffs served defendants with their discovery demands.  (Pls.' 10/22/19 Ltr.[10] at 1).  When defendants failed to respond, plaintiffs served a motion to compel on September 20, 2019, to which defendants responded in opposition on October 15, 2019.  (Id.)  In their October 22, 2019 reply letter to the Court, plaintiffs complain that instead of responding to the issue of defendants' unresponsiveness to discovery, the defendants' counsel "submitted a response that reads more like an ill-fated motion to dismiss, filled with non sequiturs and red herrings," including arguments that "are either false or so meritless that Mr. Abrahamsen clearly did not perform a reasonable inquiry into whether they have a basis in fact or law."  (Id. at 2). Plaintiffs requested authorization to move for sanctions under Rule 11.  (Id.)  Plaintiffs also noted that despite his representation to the Court in July, counsel for defendants still had not paid the total amount ordered by the District Court in sanctions.  (Id. at 1).

In response to the plaintiffs' October 22, 2019 letter, defendants' counsel seemingly ignored the issue of the previously ordered and still unpaid sanctions award.  Instead, counsel submitted a letter arguing that the Funds "must know who these employees are," that the Funds conducted an audit and have the payroll records and information about the employees, and "so it is not too difficult for the Fund[s] to identify those employees, produce the authorization cards in order to get the information sought in discovery in this case."  (Defs.' 10/31/19 Ltr.[11] at 1-2). The letter further argued that the defendants were not signatories to the CBA, and that "[i]t seems completely obvious that the Funds have filed this action without a legal predicate in the form of representing beneficiaries of the Fund who recognize Local 7 as their exclusive

---

[10] Citations to "Pls.' 10/22/19 Ltr." refer to the letter submitted by plaintiffs, dated October 22, 2019, ECF No. 73.

[11] Citations to "Defs.' 10/31/19 Ltr." refer to the letter submitted on behalf of defendants, dated October 31, 2019, ECF No. 74.

Collective-Bargaining Representative." (Id. at 3). Other than contending that plaintiffs had "no right to conduct a fishing expedition," counsel for defendants did not address his failure to respond to discovery. (Id.) Counsel for defendants also argued that Rule 11 sanctions should be imposed on plaintiffs for filing a "frivolous" lawsuit and for counsel's attempt to apply Rule 11 to a discovery dispute. (Id. at 3).

On November 4, 2019, this Court held a conference with counsel, at which time plaintiffs agreed to withdraw their motion to compel without prejudice, and defendants were given two weeks to respond to outstanding discovery. When defendants failed to provide discovery by November 18, 2019, as Ordered by this Court, plaintiffs filed a letter dated November 21, 2019, in which they sought another conference with the Court or leave to file a formal motion to compel to address defendants' failure to respond to this Court's November 4, 2019 Order. (Pls.' 11/21/19 Ltr.[12] at 1). In their letter, plaintiffs noted that defendants had neither produced responses, nor had they asked for an extension of time; instead, counsel had failed to return any of plaintiffs' counsel's phone calls or emails. Moreover, the sanctions ordered by Judge Amon remained unpaid. (Id. at 1-2). Accordingly, this Court issued an Order to Show Cause why sanctions should not be imposed pursuant to Fed. R. Civ. P. 37 for defendants' failure to comply with the Court's Order of November 4, 2019 and scheduled a hearing for December 16, 2019.[13]

On December 4, 2019, defendants' counsel submitted a letter indicating that his discovery responses were overdue because "I have gotten no cooperation from my clients despite my efforts." (Defs.' 12/14/19 Ltr.[14] at 1). In the letter, counsel indicated that he was seeking to

---

[12] Citations to "Pls.' 11/21/19 Ltr." refer to the plaintiffs' letter, dated November 21, 2019, ECF No. 76.

[13] See Electronic Order dated 11/25/19.

[14] Citations to "Defs.' 12/4/19 Ltr." refer to the letter submitted by defendants' counsel, dated December 4, 2019, ECF No. 77.

file a motion to withdraw.  (Id.)  However, he did not request an adjournment of the show cause hearing, nor was there any mention of the outstanding sanctions award.  (Id.)

On December 16, 2019, the Court held the Show Cause hearing.  Plaintiffs' counsel appeared before the Court, but counsel for defendants, Mr. Abrahamsen, failed to appear.  On that same date, this Court issued an Order that sanctions would be imposed for counsel's failure to appear and Ordered Mr. Abrahamsen to submit a copy of the Order to his clients.  (See 12/16/19 Order[15] at 1).  Thereafter, plaintiffs' counsel submitted their Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 and 37.

On January 7, 2020, Mr. Abrahamsen submitted an Opposition to Motion for Sanctions, as well as a request to seek an Order to withdraw from further representation of defendants. (ECF No. 82).  On February 20, 2020, the Court issued a Report and Recommendation, recommending that the district court grant Mr. Abrahamsen's motion to withdraw subject to his payment of the outstanding $5,892.10 owed as ordered on June 4, 2019.  (2/20/2020 R&R[16] at 20).  The Court furthered recommended that the district court issue an Order requiring defendants to obtain new counsel within two weeks of the Report and Recommendation.  (Id.) The Court further recommended that if the defendants failed to obtain new counsel within two weeks, or if the Court received a status letter from plaintiff's counsel by April 1, 2020 reporting that defendants' new counsel was not engaging in productive discovery discussions, the district court should strike defendants' Answer, and enter a default judgment against them.  (Id.)  The

---

[15] ECF No. 78.

[16] Citations to "2/20/2020 R&R" refer to the Report and Recommendation of this Court, issued February 20, 2020, ECF No. 84.

Court finally recommended that the plaintiffs be awarded $10,270 in attorney's fees, in addition to the outstanding $5,892.10, all to be paid by Mr. Abrahamsen.[17]  (Id. at 25-26).

On March 11, 2020, the district court adopted the Report and Recommendation, and Ordered plaintiff to file a status report by May 1, 2020, advising the court whether defendants' new defense counsel was engaging in productive discovery.  (ECF No. 85).  On March 16, 2020, the Clerk of Court entered judgment granting Mr. Abrahamsen's motion to withdraw subject to his payment of the outstanding $5,892.10.  (ECF No. 86).  The judgment awarded a total amount of $16,162.10 to plaintiffs to be paid by Mr. Abrahamsen.  (Id.)[18]

On March 26, 2020, plaintiff's counsel submitted a Motion for Sanctions against defendants for violating the Court's March 11, 2020 Order.  (ECF No. 87).  In the letter, plaintiffs' counsel noted that defendants had not retained new counsel, and as such, requested that the Court enter a default against the defendants.  (Id.)  On March 30, 2020, the district court granted plaintiff's motion, struck the defendants' Answer, and directed the Clerk of Court to enter a default against the defendants.  (ECF No. 88).

On March 31, 2020, the Clerk of the Court entered a Certificate of Default in this matter against the defendants.  (ECF No. 89).  Thereafter, plaintiffs filed their motion for default judgment on April 28, 2020 (ECF No. 90), which the district court referred to the undersigned for a Report and Recommendation.

---

[17] The Court recommended that as a sanction for his failure to provide discovery, Mr. Abrahamsen pay $10,270 in attorney's fees pursuant to Rule 37(b)(2)(C), which provides for an award of "reasonable expenses, including attorney's fees."  (2/20/2020 R&R at 21) (citing Local Union No. 40 of the Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Car-Win Constr., Inc., 88 F. Supp. 3d at 262).  This amount was in addition to the sanctions amount previously imposed by Judge Amon.

[18] On December 11, 2020, plaintiffs informed the Court that Mr. Abrahamsen has failed to pay any of these court ordered sanctions.

DISCUSSION

**A. Default Standard**

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by recording a notation of the party's default on the docket maintained by the Clerk.  See id.; Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that default judgment is an extreme remedy, and therefore should be entered only as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  Although the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that district courts must balance that interest with the responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95 96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and all doubts should be resolved in favor of the defaulting party.  Id.  Thus, a plaintiff is not entitled to a default judgment and any concomitant damages as a matter of right simply by virtue of a defendant's procedural default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded adequately in the complaint, thereby placing defendants on notice of the relief sought, see Fed. R. Civ. P. 54(c) (providing that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated when a court awards damages that accrued during the pendency of litigation, so long as the complaint provided notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for entering default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant[s]." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id. Thus, for the purposes of an inquest, the Court accepts as true all factual allegations in the complaint, except those relating to damages, and the "plaintiff is entitled to all reasonable inferences from the evidence offered." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). While

"the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

Thus, in this case, plaintiffs bear the burden of demonstrating the extent of their damages as to each element of the award they seek. In support of their request for damages, plaintiffs have submitted: the sworn declaration of Rose Marie Toneatto, the Local Fund's administrator; the affirmation of plaintiffs' counsel, John M. Harras; a memorandum of law; affidavits of proof of service; a certificate of default; and a proposed order, along with various other exhibits and documentation. The Court makes its recommendation based upon the ample documentation submitted by plaintiffs and finds there is no need to hold an inquest hearing.[19]

## B. Legal Standard for Alter Ego Claims[20]

Plaintiffs seek to recover from Elite and Picnic Worldwide under the theory that Picnic Worldwide is Elite's alter ego. According to the Complaint, Elite shifted its operation to the alter ego Picnic Worldwide after signing the above-mentioned Settlement Agreement with the Funds. (Compl. ¶¶ 25-37). "The purpose of the alter ego doctrine in the ERISA context is to

---

[19] On March 11, 2020, the Court ordered defendants to obtain new counsel no later than 14 days following the filing of the order and informed defendants that if they failed to do so, the Court would strike defendants' Answer and enter a default against them. (ECF No. 85). Defendants did not request a hearing or otherwise respond as Ordered. (ECF No. 88; Affirmation of John M. Harras ("Harras Aff.") dated April 24, 2020, ¶ 8, Ex. N, ECF No. 92).

[20] As an ERISA default, this matter is before the Court under federal question jurisdiction. For the purposes of its alter ego analysis, the Court draws upon both New York and federal common law, as (1) it is not clear whether New York or federal common law governs the alter ego analysis; (2) the parties do not seek a choice of law analysis; and (3) the standards for establishing alter ego are substantially the same under both bodies of law. See In re Lyondell Chem. Co., 543 B.R. 127, 139 (Bankr. S.D.N.Y. 2016)

prevent an employer from evading its obligations under the labor laws through a sham transaction or technical change in operations." Ferrara v. Smithtown Trucking Co., Inc., 29 F. Supp. 3d 274, 284 (E.D.N.Y. 2014) (quoting Retirement Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S., 629 F.3d 282, 288 (2d Cir. 2010) (internal quotations omitted)). "To protect employee benefits, courts observe 'a general federal policy of piercing the corporate veil when necessary.'" Id. (quoting N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 647 (2d Cir. 2005)). When an entity is determined to be an alter ego, that "'signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the [collective bargaining agreement].'" Id. (quoting Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL–CIO v. Custom Air Sys., Inc., 357 F.3d 266, 268 (2d Cir. 2004)). If an alter-ego claim is asserted in conjunction with an ERISA cause of action, "the latter may provide the basis for ancillary jurisdiction over the alter-ego claim." Id. at 281. The Second Circuit has stated that "[t] he test of alter ego status is flexible, allowing courts to weigh the circumstances of the individual case" while assessing the following key factors: "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership." Id. (internal quotation marks omitted); see also Trustees of the New City Dist. Council of Carpenters Pension Fund v. Integrated Structures Corp., 595 F. App'x 15, 18 (2d Cir. 2014) (summary order) (noting that whether two entities shared telephone numbers and equipment or kept their finances separate were relevant considerations in determining alter ego status).

The doctrine is "primarily applied in situations involving successor companies, where the successor is merely a disguised continuance of the old employer." Retirement Plan of Unite Here Nat. Ret. Fund v. Kombassan Holding A.S., 629 F.3d at 288. Its application in these

contexts is in accordance with the Supreme Court's holding in Fall River Dyeing & Finish Corp. v. NLRB, 482 U.S. 27, 107 S. Ct. 2225 (1987). There the Court held that, in the context of determining a successor's duty to bargain, the factors demonstrating the existence or non-existence of substantial continuity include: whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; whether the new entity has the same production process, produces the same products, and basically has the same body of customers. Fall River Dyeing and Finish Corp. v. NLRB, 482 U.S. at 43; see also William Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991) (noting that the key to a determination of alter ego is "control" of the corporation, whether of a subsidiary by a parent or of the corporation by its stockholders (citing American Protein v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988)). Courts have used the Fall River factors to make a specific factual finding that a successor corporation was bound by a predecessor's CBA, at least to the extent of its arbitration clause. See Stotter Div. of Graduate Plastics Co. v. Dist. 65, 991 F.2d 997, 1001 (2d Cir. 1993).

Looking at those factors in this case, the Court finds that plaintiffs have adequately alleged facts showing that Picnic Worldwide is an alter ego of Elite. In their Complaint, the Funds detailed the alter ego connection between Picnic Worldwide and Elite. As established in the Complaint, Elite and Picnic Worldwide share the same management and supervisor[21] (Compl. ¶¶ 25, 28-32); the same business purpose, specifically installing tile, terrazzo, and other flooring at construction projects (id. ¶¶ 28-29, 34); the same employees that perform Covered Work (id. ¶¶ 30-34); the same facilities, equipment, and vehicles (id. ¶ 33); and the same customers, specifically general contractors on construction projects in the New York

---

[21] Chris Picinic is the principal of both entities. (Compl. ¶ 29.)

Metropolitan Area.  (Id. ¶¶ 25-26, 30-32).  The Funds have also demonstrated a sufficient continuity of identity between defendants, as the defendants have the same business purpose, the same employees, perform the same jobs under the same conditions for the same group of customers.  (See Compl. ¶¶ 25-36).  See also Local 348-S, UFCW, AFL-CIO v. Meridian Mgmt. Corp., 583 F.3d 65, 74 (2d Cir. 2009) (holding that a substantial continuity exists under circumstances where the business of both employers is essentially the same; the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; the new entity has the same production process, produces the same products, and basically has the same body of customers).

When considering a motion for default judgment, all pleadings are deemed true.  Au Bon Pain Corp. v. Artect Inc., 653 F.2d 61, 65 (2d. Cir. 1981).  Accepting the pleadings as true, the Funds have established that defendant Picnic Worldwide is the alter ego of defendant Elite. The Funds have also established that Chris Picinic, former president of Elite and current principal at Picnic Worldwide (Compl. ¶¶ 25, 28-32), had knowledge of Elite's liability to the Funds.  The Funds pleaded that Chris Picinic created Picnic Worldwide to evade Elite's legal obligations to the Funds under Elite's CBA and under ERISA (Compl. ¶ 36); that in itself is evidence that defendants are alter ego entities.  See Retirement Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S., 629 F.3d at 288 (holding that the existence of "anti-union animus or an intent to evade union obligations" favors a finding of alter ego status).

Given the allegations in the Complaint, which have not been challenged by defendants, the Court finds there are sufficient facts to state a plausible claim of alter ego.  Thus, the Court respectfully recommends a finding that defendants Elite and Picnic Worldwide are alter egos of one another.  When defendants are found to be the alter egos of each other, they may be held

jointly and severally liable for a prior judgment issued against one of the defendants.  See, e.g.,

Trustees of the Local 7 Tile Indus. Welfare Fund v. Richard's Improvement Bldg. Inc., No. 15

CV 3898, 2016 WL 6110455, at *16 (E.D.N.Y. Aug. 1, 2016).  As such, the Court now

examines the defendants' total liability.


**C. Outstanding Settlement Agreement Judgments**

Plaintiffs have submitted the Declaration of Rose Marie Toneatto in support of Default

Judgment, dated and filed on April 28, 2020.  (See generally Toneatto Decl.[22]).  Ms. Toneatto is

the administrator of the Mosaic and Terrazzo Welfare, Pension, Annuity and Vacation Funds

(the "Local Funds").  (Id.)  According to Ms. Toneatto, Elite was obligated to pay contributions

to the Funds no later than fifteen days after the end of a month during which hours were

worked.[23]  (Id. ¶ 6).  The CBA also required Elite to contribute to the Funds at specified hourly

rates for each hour of Covered Work performed.  (Id. ¶ 8).  The CBA provided that "the

Employer agrees to and shall be bound by all terms and conditions of the Trust Agreements

creating the Trust Funds set forth in this Article of the Agreement and by any rules, regulations,

or By-Laws adopted by the Trustees of the Funds to regulate said Fund, as they may be amended

from time to time."  (Id. ¶ 10 (quoting Ex. A at Article XVI(I))).

After a dispute arose between the Funds and Elite during the period of the CBA when

Elite failed to remit contributions to the Funds for its employees' Covered Work, the parties

entered into a Settlement Agreement whereby Elite and Elite's principal, Chris Picinic, agreed to

pay the Funds the sum of $874,236.01.  (Id. ¶ 16 (citing Ex. D); see n.3 supra).  Additionally,

---

[22] ECF No. 91.

[23] The relevant CBA, under which Elite was to make contributions to the Funds, is attached as Exhibit A to Ms. Toneatto's Declaration.  (See id., Ex. A, ECF No. 91-1).

according to Ms. Toneatto, a Confession of Judgment for Elite and Mr. Picinic was filed in the event that Elite and Mr. Picinic defaulted under the Settlement Agreement. (Id. ¶ 17 (citing Ex. E and F)). On June 23, 2015, the Funds obtained a federal judgment against Elite in the amount of $774,236.01 after Elite and Mr. Picinic defaulted in their payments under the Settlement Agreement. (Id. ¶ 21 (citing Ex. I)).

When defendants are found to be the alter egos of each other, they are accordingly jointly and severally liable for a prior judgment issued against one of the defendants. See, e.g., Trustees of the Local 7 Tile Indus. Welfare Fund v. Richard's Improvement Bldg. Inc., 2016 WL 6110455, at *16. Thus, as an alter ego of Elite, Picnic Worldwide is jointly and severally liable with Elite for the judgment, of which $694,761.16 remains outstanding.[24] (Toneatto Decl. ¶ 22, Exs. H-I).

Having reviewed the records and other documents provided by the plaintiffs, including the sworn Declaration of Ms. Toneatto, and the records of amounts paid pursuant to the Settlement Agreement, the Court finds that plaintiffs have established that Elite, and Picnic Worldwide owe plaintiffs $694,761.16 outstanding from the June 23, 2015 federal judgment. Accordingly, it is respectfully recommended that plaintiffs be awarded $694,761.16 and that Elite and Picnic Worldwide be held jointly and severally liable to make those payments.

The Court notes that it does not appear that plaintiffs are seeking any post-judgment interest in connection with the federal judgment previously entered on the settlement amount.

---

[24] Defendants agreed to pay the settlement amount by way of an initial payment of $100,000.00, followed by thirty monthly installment payments for the balance. (Toneatto Decl., Ex. D ¶ 1). Defendants defaulted under the Settlement Agreement after paying the initial installment of $100,000.00. (ECF No. 51). After the Funds obtained the judgment, the Funds were able to recover only a portion of the amounts owed by Elite, but according to the Declaration of Rose Marie Toneatto and copies of the state and federal judgments, as well as a copy of the Confession of Judgment for Elite and for Mr. Picinic, $694.761.16 remains outstanding on the judgments. (Compl. ¶ 22).

(Harras Decl. ¶ 21). Since post-judgment interest is mandatory on awards in civil cases, plaintiffs are directed to clarify whether they seek post-judgment interest on the previously entered federal judgment and if so the amount they should calculate the amount owed as of the date of this Report and Recommendation.

### D.  Unpaid Contributions

In addition to seeking an Order requiring defendants to comply with the federal judgment and pay amounts owed pursuant to the previously agreed upon settlement, plaintiffs also seek an award of $218,838.23 in additional unpaid contributions owed for the period March 1, 2015 through June 7, 2015.  (Tonneato Decl. ¶ 23).  These delinquencies were not included as part of the earlier settlement and judgments.  (See id. Ex. J).

ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make contributions in accordance with the terms and conditions of . . . such agreement."  29 U.S.C. § 1145.  Courts in this circuit have recognized that Section 1145 establishes the elements necessary to make out a claim for failure to pay contributions.  See, e.g., Trustees of Local 813 Ins. Trust Fund v. Freedom Demolition, No. 13 CV 2701, 2014 WL 5305983, at *2 (E.D.N.Y. Oct. 15, 2014) (noting that Section 1145 "establishe[s] the elements required to state a claim for failure to pay contributions").  A fiduciary may bring such an action to recover the unpaid contributions, interest on the unpaid contributions, and liquidated damages as specified by the subject plan.  29 U.S.C. § 1132(g)(2).

Here, the plaintiffs are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with Section 302(c) of the

18

LMRA, which qualify as employee benefit funds as defined by ERISA.  (Compl. ¶ 4).

Defendants were employers as defined by ERISA and were required to make contributions to the

Funds on behalf of their employees.  (Id. ¶¶ 6-7).

Plaintiffs assert that defendants owe delinquent contributions in the amount of

$193,432.82 to the Local Funds, in addition to $24,871.65 in contributions owed to the

International Funds, and $533.76 owed to the Promo Fund.[25] (Id., Ex. K).  However, the Court

finds that the papers do not establish plaintiffs' entitlement to the amount of damages they seek.

Plaintiffs have failed to allege facts sufficient to show that they have standing to collect

contributions owed to the Promo Fund.  The Fund is not mentioned in plaintiffs' Complaint.

Plaintiffs now assert that the Local Funds are the "collection agent" for the Promo Fund.

(Toneatto Decl. ¶ 8).  In support of this assertion, they cite Article XVII, Section (C) of the

CBA.  This section directs that:

> [p]ayment of all fringe benefit contributions … shall be tendered through the
> purchase of contribution receipts via electronic means under the Contribution
> Receipt System ("CRS") to the Mosaic, Terrazzo and Chemical Product
> Decorative Finisher Masons Workers Association, Local No. 7 of New York and
> New Jersey Benefit Fund Office located at 45-34 Court Square, Long Island City,
> New York 11101.

This clause does not even refer to the Local Funds or the Trustees, plaintiffs in this case, let

alone designate them as a collection agent.  More importantly, even if plaintiffs had established

that the Local Funds were authorized to act as collection agent, they would still lack standing to

bring suit on behalf of the Promo Fund because that entity has not been named as a plaintiff.  See

Trustees of the Local 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr., No. 19 CV 1809,

---

[25] According to the CBA, the "Promo Fund" or Promotional Fund serves "to promote the Mosaic
and Terrazzo industry, to encourage and increase the use of mosaic and terrazzo and to foster the common
interest and general welfare of employees and all those engaged in the Mosaic and Terrazzo Industry."
(Toneatto Decl. Ex. B, Article XVI (G).)

2020 WL 7034025, at *6 (E.D.N.Y. Sept. 23, 2020). The Court respectfully recommends that unpaid contributions to the Promo Fund be denied at this time for lack of standing.

      As to the Local Funds and International Funds, plaintiffs' papers do not establish their entitlement to the amount of damages they seek. The Local Funds' damages calculations include deficient amounts for nine line items: "Vacation Fund," "Local Pension Fund," "Welfare," "Local Annuity Fund," "Dues 1," "Dues 2," "Defense Fund," "Local PAC," and "Building Fund." (Toneatto Decl., Ex. J). While the first four entries seem as if they might correspond to the funds administered by the Local Fund plaintiff, plaintiffs do not make this assertion in their papers, nor do they provide any evidence to confirm that it is correct. Plaintiffs have not explained why they are entitled to recover damages based on monies owed for the Defense Fund, Local PAC, or Building Fund. These funds are included as "deductions" rather than "fringe benefits" in the CBA. (Toneatto Decl. Ex. A, Sched. A). They are not included in the list of funds that will be administered by a board of trustees. (Id., Art. XVI). Nor are they mentioned in the local funds collection policy. (Toneatto Decl. Ex. B). Of particular concern, plaintiffs appear to seek recovery of union dues, which are not recoverable under ERISA. See Trustees of the Local 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr., 2020 WL 7034025, at *6 (citing Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 281-82 (E.D.N.Y. 2009)). Nor have plaintiffs alleged any other basis to justify their collection of dues.

      The reports supporting the International Funds' claim are equally confusing. The calculations include the following five line items: "Int'l Pension Fund," "IPF Pens Prot Act," "Int'l Masonry Inst," "IU Dues Checkoff," and "Int'l BAC/PAC." Aside from the International Pension Fund, these entities are not explicitly mentioned in the pleadings, and plaintiffs have not alleged that they are employee benefit plans under Section 3(3) of ERISA. (See generally

Compl.)  IU Dues Checkoff and International BAC/PAC are both listed as deductions, rather than fringe benefits, in the CBA.  (Toneatto Decl. Ex. A, Sched. A).  The Court is unable to determine at this time that plaintiffs are entitled to receive contributions owed to these entities.

Accordingly, it is respectfully recommended that plaintiffs' request for unpaid contributions be denied without prejudice to renew upon the submission of appropriate paperwork demonstrating plaintiffs' standing to bring these claims and the basis for recovery of these specific items addressed herein.

**E. Interest and Liquidated Damages**

Plaintiffs also seek prejudgment interest, post-judgment interest, and liquidated damages based on the unpaid contributions allegedly owed by the defendants.  (Harras Decl. ¶ 21).  Given that the Court recommends denial of the unpaid contributions claims without prejudice to renew, the Court is unable to recommend awarding these amounts at this time.  The Court further notes that plaintiffs' current submission failed to provide an explanation as to how the prejudgment interest amounts were calculated.  Accordingly, the Court respectfully recommends that the plaintiffs' request for interest and liquidated damages be denied without prejudice, subject to plaintiffs submitting additional information demonstrating their entitlement to recover contributions and other deductions and an explanation as to how they calculated the amount of interest they are claiming for each of the Funds.

**F. Defendant Picnic Worldwide to Submit to an Audit**

Plaintiffs seek an Order requiring defendant and Picnic Worldwide to submit to an audit of their books and records to determine if additional contributions are due and owing.  A court is

authorized to award "such other legal or equitable relief as [it] deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  Under an ERISA claim, courts may direct a defendant to comply with a requirement under a CBA that the defendant conduct an audit of its records.  See, e.g., Trustees of the N.Y. City Dist. Council of Carpenters Pension Fund v. Vintage Tile & Flooring, Inc., 14 CV 6450, 2015 WL 3797273, *5-6 (S.D.N.Y. June 18, 2015); Lanzafame v. Dana Restoration, Inc., 09 CV 873, 2010 WL 6267657, at *13-14 (E.D.N.Y. Aug. 12, 2010).  Courts direct defendants to submit to an audit when, without such relief, ERISA multiemployer benefit plans would not be able to determine the amount of the defendants' delinquent contributions.  See Local Union No. 40 of the Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Car-Win Constr., Inc., 88 F. Supp. 3d 250, 277 (S.D.N.Y. 2015).

The CBA under which defendant Elite entered into required that employers submit to an audit when requested by the Funds to determine the amount of any delinquent contributions. (Toneatto Decl., Ex. A).  As an alter ego of Elite, Picnic Worldwide is subject to the terms of Elite's CBA.  (See alter ego discussion, supra at pp. 12-16).

The Funds have not been provided with any records or reports from which they could calculate Picnic Worldwide's delinquency arising from its work covered by Elite's CBA.  The Court therefore respectfully recommends that the defendant Picnic Worldwide submit to an audit for the period beginning May 19, 2017 by furnishing its books and records to the Funds within 30 days of the entry of the Order.

**G. Attorneys' Fees and Costs**

1. Attorneys' Fees

Plaintiffs also seek an award of $111,690.00 in attorneys' fees pursuant to 29 U.S.C. § 1132(g)(2)(D).  (Harras Decl. ¶ 21, Ex. P).

In support of these requests, plaintiffs have submitted the Declaration of Mr. Harras, who is a partner at the law firm of Virginia & Ambinder, LLP (the "Firm"), which has represented plaintiffs in this action.  In accordance with New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), the Firm has submitted contemporaneous billing records setting forth the amount of time spent rendering services, the dates when such services were rendered, the hourly rate at which the services were charged, the name of the attorney or paralegal rendering services, and a description of the services performed.  (See Harras Decl., Ex. P).

However, in light of the Court's recommendations that plaintiffs' requests for damages for delinquent contributions, interest, liquidated damages, audit costs, and injunctive relief be denied without prejudice, the Court respectfully recommends that plaintiffs' request for attorneys' fees be denied at this time, and that plaintiffs be allowed to renew their request once they have provided supplemental papers on the other outstanding issues.

2. Costs

Under ERISA, plaintiffs who prevail in an enforcement action are entitled to recover reasonable costs. 29 U.S.C. § 1132(g)(2)(D).  Filing fees and service of process fees are generally recoverable.  See 28 U.S.C. § 1920; Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 290 (E.D.N.Y. 2010).

Here, plaintiffs seek an award of costs in the amount of $883.92 consisting of a filing fee of $400.00, $300.00 for service of process fees, $155.52 in postage and shipping fees, $11.00 in transportation fees, and $17.40 for charges for research services.  (See Harras Decl. ¶ 18, Ex. P). In support of this requests, plaintiffs have attached the invoice showing the fees for service of process, postage and shipping, transportation, and research services.  (Id.)  In addition, the Court takes judicial notice of the filing fee in this district.  See Phillip Morris USA v. Jackson, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011) (taking judicial notice of the filing fee for this court); Joe Hand Promotions v. Elmore, No. 11 CV 3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013) (same).  Although it is dubious that fees for electronic research remain compensable, the $17.40 in research costs requested here are minimal and consistent with precedent in this Circuit. See Dallas v. Goldberg, No. 95 CV 9076, 2003 WL 22872325, at *2 (S.D.N.Y. Dec. 5, 2003) (holding that "computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost.") (quoting Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir. 1995)).

Since plaintiffs have supplied adequate documentation in support of their requests for costs, the Court respectfully recommends that plaintiffs be awarded costs in the amount of $883.92.


<u>CONCLUSION</u>

In light of the foregoing, the Court respectfully recommends that plaintiffs' motion be granted to the extent that plaintiffs seek to recover unpaid settlement amounts and an audit of defendant's books, and denied without prejudice as to their request for unpaid contributions.  The

Court respectfully recommends that plaintiffs be awarded $695,645.08 consisting of $694,761.16 outstanding from the Settlement Agreement, and $883.92 in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiffs' counsel is Ordered to serve a copy of this Report and Recommendation on defendants Picnic Worldwide and Elite by mail to their last known addresses.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 3, 2021

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York