UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
TRUSTEES OF THE MOSAIC AND
TERRAZZO WELFARE, PENSION,
ANNUITY, AND VACATION FUNDS and
TRUSTEES OF THE BRICKLAYERS &
TROWEL TRADES INTERNATIONAL
PENSION FUND,

                     Plaintiffs,

         -against-

ELITE TERRAZZO FLOORING, INC. and
PICNIC WORLDWIDE LLC,

                     Defendants.
--------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
18 CV 1471 (CBA) (CLP)

POLLAK, Chief United States Magistrate Judge:

    On March 9, 2018, plaintiffs Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds and Trustees of the Bricklayers & Trowel Trades International Pension Fund (collectively, "plaintiffs" or the "Funds"), commenced this action against defendants Elite Terrazzo Flooring, Inc. and Picnic Worldwide LLC ("defendants"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to collect delinquent employer contributions owed to a group of employee benefit plans and for declaratory relief. (Compl.[1] ¶ 1).

    On March 31, 2020, the Clerk of Court entered a default against defendants (see ECF No. 89), and, on April 28, 2020, plaintiffs filed their first motion for default judgment. (See ECF No.

---

[1] Citations to "Compl." refer to the Complaint filed on March 9, 2018, ECF No. 1.

90).  On March 3, 2021, this Court issued a Report and Recommendation recommending that the district court grant in part and deny in part plaintiffs' motion for default judgment.  (See 3/3/21 R&R[2]).  More specifically, this Court recommended that plaintiffs' request for unpaid contributions, prejudgment interest, liquidated damages, and attorney's fees be denied without prejudice.  (Id. at 18-21, 23).  However, the Court recommended that the district court grant plaintiffs' default judgment motion for unpaid settlement amounts and costs in the amount of $695,645.08.  (Id. at 17, 24).  The Court also noted that plaintiffs had not made clear whether they were requesting post-judgment interest on the unpaid settlement amount, and therefore did not recommend awarding it.  (Id. at 17-18).  The Honorable Carol B. Amon adopted the Report and Recommendation in its entirety on March 25, 2021.  (See ECF No. 100).  On April 27, 2021, plaintiffs filed a motion to amend their first motion for default judgment.  (See Amend. Mot.[3]). The amended motion was referred to the undersigned by Judge Amon on April 30, 2021.

For the reasons set forth below, the Court respectfully recommends that the Funds' renewed motion for default judgment be granted, and plaintiffs be awarded the requested unpaid contributions, post-judgment interest for both the unpaid settlement amounts and the unpaid contributions, interest on the unpaid contributions, liquidated damages, and attorney's fees.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts underlying this action are set forth more fully in the Court's earlier Report and Recommendations.  (See 3/3/21 R&R at 2-9; see also 2/20/20 R&R[4]).  Briefly, plaintiffs Trustees of the Mosaic and Terrazzo Welfare, Pension, Annuity, and Vacation Funds

---

[2] Citations to "3/3/21 R&R" refer to this Court's Report and Recommendation, issued March 3, 2021, ECF No. 99.

[3] Citations to "Amend. Mot." refer to plaintiff's motion to amend/correct/supplement their motion for default judgment, filed April 27, 2021, ECF No. 102.

[4] Citations to "2/20/20 R&R" refer to this Court's Report and Recommendation, issued February 20, 2020, ECF No. 84.

(the "Local Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c), and the Local Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(21). (Compl. ¶ 4). Plaintiffs Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "International Funds") are also trustees of multiemployer labor-management trust funds and employee benefit plans within the meaning of ERISA. (Id. ¶ 5). According to the Complaint, at all relevant times, defendant Elite Terrazzo Flooring, Inc. ("Elite") was an employer within the meaning of ERISA. (Id. ¶ 6). Defendant Picnic Worldwide LLC ("Picnic Worldwide") is also alleged to be a New Jersey corporation and an employer as defined in ERISA. (Id. ¶ 7).[5]

The Complaint further alleges that Elite was a party to a collective bargaining agreement ("CBA") with the Mosaic, Terrazzo and Chemical Product Decorative Finisher Masons Workers Association Local No. 7 of New York, New Jersey & Vicinity of the International Union of Bricklayers and Allied Craftworkers (the "Union"), which required the remittance of contributions to the Funds on behalf of the covered employees. (Id. ¶¶ 8-11). Plaintiffs contend that Elite owes contributions to the Funds for work performed during the period March 1, 2015 through June 7, 2015. (Id. ¶ 23).

On February 20, 2020, this Court issued a Report and Recommendation that the district court strike defendants' answer and enter a default against defendants if they failed to obtain new

---

[5] Although defendants filed an Answer that included counterclaims against plaintiffs under the Racketeer Influenced Corrupt Organization ("RICO") provisions of 18 U.S.C. § 1961 et seq., along with a third-party complaint asserting claims against Marble Terrazzo and Specialty Contractors Inc., William Zonca, Local 7 Mosaic & Terrazzo and Chemical Product Finisher Mason Workers Association, and Michael Magnam (see ECF No. 10), Judge Amon granted plaintiffs' motion to dismiss the RICO counterclaims and dismissed the third-party complaint as well. (ECF No. 63; see also Electronic Minute Entry, dated Sept. 7, 2018 (dismissing Marble Terrazzo and Specialty Contractors Inc. from the action)).

counsel.[6]  (2/20/20 R&R at 20).  After plaintiffs notified the Court that defendants had failed to

obtain  new counsel (see ECF No. 87), the district court granted plaintiffs' motion to strike

defendants' answer, and the Clerk of Court entered a default against defendants on March 31,

2020.  (See ECF Nos. 88, 89).

As set forth above, plaintiffs filed for default judgment against defendants on April 28,

2020.  (See ECF No. 90).  In the March 3, 2021 Report and Recommendation, this Court found

that Elite and Elite's principal, Chris Picinic, were jointly and severally liable for the outstanding

settlement judgments that the Funds obtained in state court and recommended that plaintiffs be

awarded $694,761.16.  (3/3/21 R&R at 14-18).  The Court further found that Elite and Picnic

Worldwide are "alter egos" and as such are jointly and severally liable for a judgment issued

against one of them.  (See id. at 14-16).  The Court also recommended an award of costs in the

amount of $883.92.  (Id. at 23-24).

Plaintiffs also sought to recover unpaid contributions in the amount of $193,432.82 to the

Local Funds, $24,871.65 in contributions owed to the International Funds, and $533.76 owed to

the "Promo Fund," a Fund geared toward promoting the Mosaic and Terrazzo industry.  (Id. at

19 & n.25).  This Court recommended that the District Court deny the award of unpaid

contributions to the Promo Fund for lack of standing.  (Id. at 20).  As to the Local and

International Funds, this Court took issue with plaintiffs' papers in several respects:  plaintiffs

---

[6] From July 2019 to February 2020, this Court dealt with a variety of discovery issues and motions for sanctions against defendants' counsel, Richard J. Abrahamsen.  (See 3/3/21 R&R at 4-9).  In its February 20, 2020, Report and Recommendation, this Court recommended that the district court grant Mr. Abrahamsen's motion to withdraw as counsel subject to payment of his outstanding sanctions.  (See 2/20/20 R&R at 31).  That recommendation was adopted by the district court on March 11, 2020 (ECF No. 85), but to date, it is unclear if payment has been made.  In fact, plaintiffs have filed two motions for sanctions to hold firms associated with Mr. Abrahamsen jointly and severally liable for his outstanding sanctions.  (See ECF No. 96; 109).  One of these motions was granted (see ECF Nos. 105, 106), and the other is pending before this Court.  (See ECF No. 109).

failed to explain why they were entitled to recovery on several line items; they appeared to seek recovery of union dues which are not recoverable under ERISA;[7] and did not establish that they were entitled to recover contributions owed to several listed entities.  (Id. at 20-21).  As a result, this Court also recommended that the District Court deny an award of interest on the unpaid contributions, liquidated damages, and attorney's fees, but gave plaintiffs leave to renew the requests once they submitted supplemental information regarding the unpaid contributions.  (Id. at 21, 23).  Lastly, because plaintiffs did not specify whether they were seeking post-judgment interest for the unpaid settlement amounts, this Court directed plaintiffs to clarify and set forth the amount owed as of the date of the March 3, 2021 Report and Recommendation.  (Id. at 17-18).

The district court adopted the Report and Recommendation in its entirety on March 25, 2021.  (See ECF No. 100).  On April 27, 2021, plaintiffs filed a motion to amend the first motion for default judgment.  (See Amend. Mot.).

DISCUSSION

**A. Default Judgment Standard**

As set forth in the March 3, 2021 Report and Recommendation, the Court found that plaintiffs had established that they were both entitled to default judgment pursuant to Fed. R. Civ. P. 55 and entitled to recover unpaid settlement amounts based on defendants' default.  (See 3/3/21 R&R at 12-17).  However, the Court found that plaintiffs failed to carry their burden of demonstrating the extent of their damages as to the unpaid contributions.  (See id. at 18-21).  It

---

[7] Although union dues are not recoverable under ERISA, they may be recoverable under a breach of contract action based on a CBA or Trust Agreement.  See Trustees of Loc. 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr., No. 19 CV 1809, 2020 WL 7034025, at *7 (E.D.N.Y. Sept. 23, 2020) (citing Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 281-82 (E.D.N.Y. 2009)), report and recommendation adopted, 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020).  However, plaintiffs have provided no support, nor made any allegations, that the Funds are owed union dues under the CBA.

also noted that plaintiffs failed to state whether they are seeking post-judgment interest on the previously entered judgment regarding the unpaid settlement. (Id. at 17-18).

Now, in support of their request for damages, plaintiffs have submitted the sworn declaration of Rose Marie Toneatto, the Local Fund's administrator (Toneatto Decl.[8]), the affirmation of plaintiffs' counsel, John M. Harras, Esq. (Harras Decl.[9]), a letter motion in support (Amend. Mot.), and several other documents. Additionally, plaintiffs previously submitted numerous documents in support of their motion for default judgment, including declarations of Ms. Toneatto (First Toneatto Decl.[10]), Mr. Harras (First Harras Decl.[11]), a certificate of default, the Collective Bargaining Agreement (CBA[12]), and affidavits of proof of service. The Court makes its recommendation based upon the documentation submitted by plaintiffs and finds there is no need to hold an inquest hearing.

**A. Post-Judgment Interest**

Plaintiffs have clarified that they seek post-judgment interest on the previously entered federal judgment. (Amend. Mot. at 2). Further, they calculated the total interest accrued as of the date of the March 3, 2021 Report and Recommendation per this Court's recommendation, stating that they are seeking $10,296 in post-judgment interest. (Id. at 2; see also 3/3/21 R&R at 18).

---

[8] Citations to "Toneatto Decl." refer to the Declaration of Rose Marie Toneatto in Supplemental Support of Plaintiffs' Motion for Default Judgment, dated April 26, 2021, ECF No. 103.

[9] Citations to "Harras Decl." refer to the Affirmation of John M. Harras in Supplemental Support of Plaintiffs' Motion for Default Judgment, dated April 23, 2021, ECF No. 104.

[10] Citations to "First Toneatto Decl." refer to the Declaration of Rose Marie Toneatto in Support of Motion for Default Judgment, filed April 28, 2020, ECF No. 91.

[11] Citations to "First Harras Decl." refer to the Affirmation of John M. Harras, Esq. in Support of Motion for Default Judgment, dated April 24, 2020, ECF No. 92.

[12] Citations to "CBA" refer to the Collective Bargaining Agreement between the Union and Marble, Terrazzo, and Specialty Contractors Association, filed April 28, 2020, ECF No. 91-1.

Under 28 U.S.C. § 1961, interest accrues "on any money judgment in a civil case" and will be calculated at "a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the" Report and Recommendation. 28 U.S.C. § 1961(a). The federal judgment underlying this action was entered on June 23, 2015 and totals $694,761.16. (First Toneatto Decl. ¶ 21; see also ECF No. 91-9). Although plaintiffs state that the applicable interest rate is "0.26%" (Amend. Mot. at 2), the applicable rate for that date is actually 0.28% per the schedule of post-judgment interest rates provided by plaintiff. (ECF No. 104-1). Since "the interest rate for any particular judgment is to be determined as of the date of the judgment, and that is the single rate applicable for the duration of the interest accrual period," this Court will use the rate and apply it to the entirety of the judgment. See Cappiello v. ICD Publ'ns, 868 F. Supp. 2d 55, 63-64 (E.D.N.Y. 2012), aff'd sub nom. Cappiello v. ICD Publ'ns, Inc., 720 F.3d 109 (2d Cir. 2013) (quoting Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 838-39 (1990)). Based on this rate, the daily interest accrued is $5.33: ($694,761.16 times .0028) divided by 365 equals $5.33. As there were 2,080 days between June 23, 2015 and March 3, 2021, the post-judgment interest that has accrued since entry of June 23, 2015 judgment is $11,086.40. Since post-judgment interest in mandatory in federal civil judgments, see, e.g., Cappiello v. ICD Publ'ns, Inc., 720 F.3d at 113 (noting that 28 U.S.C. § 1961 applies to "any money judgment in a civil case recovered in a district court" (emphasis in original)), the Court respectfully recommends that plaintiffs be granted post-judgment interest in the amount of $11,086.40.

## B. Unpaid Contributions

In their Amended Motion, plaintiffs seek a total award of $191,669.36 in additional unpaid contributions owed for the period March 1, 2015 through June 7, 2015. (Amend. Mot. at

1). Plaintiffs only request delinquent contributions on behalf of the Local Funds and the International Funds, both of which are parties to this action. (Id.) As the Court found in the March 3, 2021 Report and Recommendation, defendants were required to make contributions to plaintiffs on behalf of their employees pursuant to 29 U.S.C. § 1145. (3/3/21 R&R at 18-19). However, in considering plaintiffs' initial motion for default judgment, the Court raised a number of questions relating to their request for damages. (Id. at 19-20); see Greyhound Exhibit Grp., Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (noting that default does not constitute admission of damages and requiring independent determination of damages).

(i) Local Funds

Previously, this Court noted that several line items in the Local Funds' damage calculations, especially the "Defense Fund," "Local PAC," and the "Building Fund" were included as "deductions" rather than "fringe benefits" in the CBA, but were not included in the list of funds administered by the Board of Trustees, nor were they mentioned in the collection policy. (See 3/3/21 R&R at 20). Further, although the line items titled "Vacation Fund," "Local Pension Fund," "Welfare," and "Local Annuity Fund" appeared to correspond to the funds administered by the Local Fund, plaintiffs made no such assertion in their papers. (Id.) Lastly, the line items "Dues 1" and "Dues 2" appeared to be union dues, which are not recoverable under ERISA and plaintiffs did not allege any other basis to justify their collection of dues. (Id.)

As to the "Vacation Fund," "Local Pension Fund," "Welfare Fund," and "Local Annuity Fund" line items, the supplemental Toneatto Declaration represents that that these funds "refer to the Local Funds." (Toneatto Decl. ¶ 7; see also CBA, Art. XVI(B), (C), (F), (H)). Plaintiffs are no longer requesting damages associated with the line items listed as "Defense Fund," "Local

8

PAC," "Building Fund," "Dues 1," or "Dues 2." (<u>See</u> Local Dam. Calc.[13]). Indeed, plaintiffs now simply request the amounts previously calculated as owed to the Vacation, Pension, Welfare, and Annuity Funds. (<u>Compare</u> Former Calc.[14] <u>with</u> Local Dam. Calc.). Given the CBA provisions, the representations from Rose Marie Toneatto, administrator of the Local Funds, that attest to the fact that the Vacation, Local Pension, Welfare, and Local Annuity Funds are part of the Local Funds, and the fact that defendants have not challenged these assertions, this Court finds that plaintiffs have established their entitlement to an award of delinquent contributions owed to the Local Funds as defined.

Plaintiffs seek a total of $178,898.72 in delinquent contributions owed to the Local Funds owed for the period March 1, 2015 through June 7, 2015. (Toneatto Decl. ¶ 10). This amount corresponds with the amounts in the original calculations for the Vacation, Pension, Welfare, and Annuity Funds, as well as the resubmitted calculations. Having considered the plaintiffs' submissions, this Court respectfully recommends that plaintiffs be awarded $178,989.72 in unpaid contributions owed to the Local Funds.

(ii) <u>International Funds</u>

Like the Local Funds line items, this Court questioned several International Funds line items: the "Int'l Pension Fund," "IPF Pens Prot Act," "Int'l Masonry Inst," "IU Dues Check-Off," and "Int'l BAC/PAC." (3/3/21 R&R at 20; <u>see also</u> ECF No. 91-10). With the exception of the "Int'l Pension Fund," these entities were not explicitly mentioned in the pleadings, and plaintiffs did not allege that they were employee benefit plans under ERISA. Moreover, both

---

[13] Citations to "Local Dam. Calc." refer to the Elite Contributions due to the Welfare, Pension, Annuity, Vacation Funds for March 1, 2015 to June 7, 2015, filed April 27, 2021, ECF No. 103-1.

[14] Citations to "Former Calc." refer to the Delinquency Reports filed as an exhibit to the First Toneatto Decl, filed April 28, 2020, ECF No. 91-10.

"IU Dues Checkoff" and "Int'l BAC/PAC" are listed as deductions, rather than fringe benefits, in the CBA. (3/3/21 R&R at 20-21). In their renewed submission, plaintiffs now seek only the line items associated with "Int'l Pension Fund," which is a party to this action. (See Toneatto Decl. ¶ 8; Int'l Dam. Calc.[15]; CBA Art. XVI(E)). Much like their response to this Court's Report and Recommendation regarding the Local Funds, plaintiffs no longer request the amounts allegedly owed to the other International Fund line items. (Compare Former Calc. with Int'l Dam. Calc.). As noted in this Court's prior Report and Recommendation, the International Pension Fund is described in the pleadings, and plaintiffs now represent that it is the same entity described as the International Fund. (See 3/3/21 R&R at 20; Toneatto Decl. ¶ 8). Therefore, having considered the plaintiffs' amended submissions, this Court respectfully recommends that plaintiffs be awarded the amount requested for the International Funds: $12,770.64.

Accordingly, it is respectfully recommended that plaintiffs' request for unpaid contributions be granted and plaintiffs be awarded $191,669.36, consisting of $178,989.72 for the Local Funds, plus $12,770.64 owed to the International Funds.

**(iii)    Unpaid Contributions Interest and Liquidated Damages**

Plaintiffs also seek interest and liquidated damages based on the unpaid contributions allegedly owed by the defendants. (Amend. Mot. at 3). They seek an award of interest in the amount of $111,320.84 and liquidated damages of $38,333.87. (Id.) Under the CBA, defendants are liable for interest on the amount of the unpaid contributions at an annual rate of 10%, calculated from the date the contributions were due, and liquidated damages at a rate of

---

[15] Citations to "Int'l Dam. Calc." refer to the Elite Contributions due to the International December 2014 – June 2015, filed April 27, 2021, ECF No. 103-2. Although the title of the document states that it runs from December 2014 to June 2015, the spreadsheet itself contains dates from March 1, 2015 to June 7, 2015.

20% of the unpaid contributions. (Toneatto Decl. ¶ 14; CBA, Art. XVII(G)). Since the contributions were due on the 15th of each month and were calculated on a weekly basis (see CBA, Art XVII(D)), the interest is calculated from April 15, 2015, May 15, 2015, June 15, 2015, and July 15, 2015, depending on when the contributions were due. (See ECF No. 103-3). Thus, depending on the date the contributions were due, the amounts that comprise the $191,669.36 total in contributions owed from March 1, 2015 through June 7, 2015 will have different amounts of accrued interest.

Plaintiffs submit that the interest due on the unpaid contributions owed to the Local and International Funds is $103,905.25 and $7,415, respectively. (See ECF No. 103-3). Using the same formula set forth supra in the post-judgment interest section ((amount owed times an interest rate of 10%) divided by 365 days, times the number of days outstanding),[16] plaintiffs' calculations are slightly off as to the Local Funds; the amount should be $103,905.11 instead of $103,905.25. Plaintiffs' calculations for the interest owed to the International Funds, as cross-checked by this Court, are accurate. Combined, defendants are liable to the Funds for $111,320.68 in interest pursuant to the CBA, calculated at a rate of 10% per year from the date that the contributions were due.

Defendants are also required to pay liquidated damages at a rate of 20% of the unpaid contributions. Given that the outstanding contributions owed to the Funds amount to 191,669.26, 20% of that equals $38,333.87.

Plaintiffs also appear to seek post-judgment interest under 28 U.S.C. § 1961. (See Pls.' Mem. at 2 (seeking post-judgment interest on "all of the award")). As set forth above, post-

---

[16] The Court has also included as an Appendix plaintiffs' chart containing the calculated interest rates and the Court's calculations. (Compare App. 1 with App. 2).

judgment interest accrues "on any money judgment in a civil case" and will be calculated at "a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of" this Report and Recommendation.  28 U.S.C. § 1961(a).  Thus, plaintiffs are entitled to a post-judgment interest award at a rate of 0.14% measured from November 9, 2021.  See Post-Judgment Interest Rates – 2021, available at: https://www.casb.uscourts.gov/post-judgment-interest-rates.

Based on a review of the Toneatto Declarations and supporting documents, including the CBA, the Court recommends that plaintiffs be awarded $111,320.68 in interest and $38,333.87 in liquidated damages, plus post-judgment interest.

**(iv)    Attorney's Fees**

Lastly, plaintiffs seek an award of $122,948.50 in attorney's fees.  (Amend. Mot. at 4; First Harras Decl. ¶ 10).  With respect to attorney's fees, ERISA provides that when an employee benefit fund prevails in a legal action, the defendant is liable for legal costs.  29 U.S.C. § 1132(g)(2)(D).  Here, the CBA also establishes that the employer is liable for the benefit plan's legal costs once the employer is in default.  (See CBA, Art. XVII(G)).

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report & recommendation adopted, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the

lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must ascertain "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (internal citations and quotation marks omitted), report and recommendation adopted, 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate" (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166)).

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (quoting Perdue v. Kenny A., 559 U.S. at 553). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Id. at 167 (quoting Perdue v. Kenny A., 559 U.S. at 554); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." Millea v. Metro-North R.R. Co., 658 F.3d at 167. As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if

necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[17]  2012 WL 676350, at *5 n.8.

The burden is on the party moving for attorney's fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. 424, 433-35, 437 (1983).  In addition to plaintiffs' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that a "'district court's choice of rates [is] well within [its] discretion'" (alteration in original) (quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994))), cert. denied, 513 U.S. 876 (1994).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 866, 896 n.11 (1984).

The Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits . . . .'"  Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted).  Indeed, as the court in Simmons noted, in determining

---

[17] The Johnson factors are as follows:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

the "presumptively reasonable fee," courts should consider what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client . . . wishes to spend the minimum necessary to litigate the case effectively." Id. (citations and internal quotation marks omitted); see also Cook v. First Revenue Assurance, LLC, No. 10 CV 5721, 2012 WL 272894, at *3 (E.D.N.Y. Jan. 9, 2012), report and recommendation adopted, 2012 WL 272891 (E.D.N.Y. Jan. 30, 2012). In awarding attorney's fees in the present case, the Court is guided by the fact that default actions are ordinarily relatively simple legal matters but the defendants in this case have "flout[ed] discovery obligations, disregard[ed] [] Court Orders," and "file[ed] frivolous motions." (Amend. Mot. at 4). This Court will also consider the attorney's degree of skill, and the Court's own experience dealing with similar claims.

In support of these requests, plaintiffs have submitted the Declaration of Mr. Harras, who is a partner at the law firm of Virginia & Ambinder, LLP ("the Firm"), which has represented plaintiffs in this action. (See Harras Decl. ¶ 1). In accordance with New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), the Firm has submitted contemporaneous billing records setting forth the amount of time spent rendering services, the dates when such services were rendered, the hourly rate at which the services were charged, the name of the attorney or paralegal rendering services, and a description of the services performed. (See Billing Recs.[18]).

The Firm seeks fees for former partner Martin Fojas at a rate of $300 per hour, for associate Nicole Marmon, a 2014 law school graduate, at a rate of $225 per hour, and for legal assistants at a rate of $100 per hour. (See First Harras Decl. ¶¶ 13-15). Mr. Harras initially

---

[18] Citations to "Billing Recs." refer to the Firm's contemporaneous billing records, attached as an exhibit to the Harras Decl., filed April 27, 2021, ECF No. 104-3.

billed at the associate rate of $225 per hour, but when he was promoted to partner on January 20, 2020, he billed at the rate of $300 per hour until February 20, 2020, when the partner rate was raised to $350 per hour.  (Id. ¶ 12).  As such, the Firm seeks a partner rate of $300 per hour from February 27, 2018 until February 20, 2020, a partner rate of $350 from February 21, 2020 through the present, an associate rate of $225 per hour, and a legal assistant rate of $100 per hour.  (Harras Decl. ¶ 4).

        As plaintiffs correctly noted, courts in this Circuit have approved rates in a similar range for the Firm before.  (Amend. Mot. at 4 (collecting cases)).  Based on the Court's knowledge of the rates generally charged in this district for this type of work in connection with an ERISA default, the Court finds that the rates charged here are reasonable in light of the rates normally charged in the Eastern District of New York.  See, e.g., Trustees of Local 522 Pension Fund v. Consolidated Cos., No. 17 CV 1991, 2018 WL 2078117, at *9-10 (E.D.N.Y. Feb. 6, 2018) (recommending rates of $350 for partners and $300 for experienced associates in ERISA default), report and recommendation adopted, 2018 WL 1521775 (E.D.N.Y. Mar. 27, 2018); Division 1181 Amalgamated Transit Union—New York Emp. Pension Fund v. D & A Bus Co., 270 F. Supp. 3d 593, 623 (E.D.N.Y. 2017) (approving rates of $350 and $300 for partners and $200 for an associate in ERISA default); Trustees of Local 522 Pension Fund v. Bayway Lumber and Home Ctr., No. 16 CV 5286, 2017 WL 9511077, at *6 (E.D.N.Y. July 25, 2017) (recommending rates of $325 and $300, respectively, for partners in ERISA default), report and recommendation adopted, 2017 WL 4075182 (E.D.N.Y. Sept. 14, 2017).

        The Court now turns to the reasonableness of the number of hours billed in this matter. See, e.g., LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  In reviewing a fee application, the court should "exclude excessive,

redundant or otherwise unnecessary hours." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. at 440). Based on the contemporaneous billing records submitted to the Court, the Firm seeks compensation for a total of 441.7 hours. (Harras Dec. ¶ 7; see also Billing Recs.). Counsel appears to acknowledge that the hours expended in this case are high, particularly as it is a default motion, and he attributes the inflated hours to defendants' failures to provide discovery and comply with this Court's Orders, as well as the filing of "frivolous" motions. (Amend. Mot. at 4); see also Gesualdi v. Torretta Trucking Inc., No. 10 CV 1249, 2012 WL 1102803, at *9 (E.D.N.Y. Mar. 12, 2012) (collecting ERISA default cases that awarded between 17.7 and 25.05 hours in attorney's fees), report and recommendation adopted, 2012 WL 1103179 (E.D.N.Y. Apr. 2, 2012).

This Court agrees that the fraught history of this case created an exceptional need for additional attorney hours. (See 3/3/21 R&R at 2-9). The Firm's work on this case included drafting the Complaint, drafting an Answer and reply to defendants' counterclaims, drafting a Motion to Dismiss, engaging in extensive, albeit often unfruitful, discovery, drafting a response to defendants' Motion to Compel Arbitration, drafting various motions to compel discovery, drafting several motions for sanctions, and drafting plaintiffs' Motion for a Default Judgment, including the supplemental materials discussed herein. (Billing Recs.). Further, many of these motions involved extensive legal research and/or oral argument. (Id.) However, this Court notes that plaintiffs were already awarded $10,270 in attorney's fees as part of the sanctions against defendants' attorney. (See 2/20/20 R&R at 21-26). Plaintiffs include those same billing records in the instant motion. (Compare ECF No. 80-7 with Billing Recs.). In recommending an award of fees, the Court has subtracted the amount already awarded from the current request for attorney's fees. The Court finds the hours otherwise expended to be reasonable, especially in

light of the extensive motion practice that has occurred between plaintiffs and defendants in this case.

Accordingly, based on the hourly rates set forth above, and the number of hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded $112,678.50 in attorney's fees.

<u>CONCLUSION</u>

In light of the foregoing, the Court respectfully recommends that plaintiffs' motion be granted, and plaintiffs awarded $191,669.36 in unpaid contributions, $11,086.40 in post-judgment interest, $111,320.68 in interest on the unpaid contributions, $38,333.87 in liquidated damages, and 112,678.50 in attorney's fees for a total of $465,088.81. Plaintiffs are also entitled to post-judgment interest on the unpaid contributions, calculated at a rate of 0.14%. As stated previously, since this Court previously found that Elite and Picnic Worldwide are "alter egos," both defendants are jointly and severally liable for the total.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiffs' counsel is Ordered to serve a copy of this Report and Recommendation on defendants Picnic Worldwide and Elite by mail to their last known addresses.

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: November 9, 2021
         Brooklyn, New York

                                    *Cheryl L. Pollak*
                                    CHERYL L. POLLAK
                                    Chief United States Magistrate Judge
                                    Eastern District of New York

## APPENDIX 1

Mosaic and Terrazzo Benefit Funds
Employer Contributions Interest Calculation
2015

| | DATE DUE | DATE INT CALCULATED TO | DAYS LATE | CONTRIBUTIONS INTEREST DUE | CONTRIBUTIONS OWED | IU PENSION INTEREST DUE | IU PENSION OWED | TOTAL INTEREST DUE |
|---|---|---|---|---|---|---|---|---|
| Week Ending 3/1/15 | 4/15/2015 | 3/3/2021 | 2149 | 20,248.11 | 34,390.65 | 1,367.47 | 2,322.60 | 21,615.59 |
| Week Ending 3/8/15 | 4/15/2015 | 3/3/2021 | 2149 | 10,044.20 | 17,059.69 | 732.17 | 1,243.56 | 10,776.37 |
| Week Ending 3/15/15 | 4/15/2015 | 3/3/2021 | 2149 | 1,708.25 | 2,901.40 | 125.76 | 213.60 | 1,834.01 |
| Week Ending 3/22/15 | 4/15/2015 | 3/3/2021 | 2149 | 479.85 | 815.00 | 35.33 | 60.00 | 515.17 |
| Week Ending 3/29/15 | 4/15/2015 | 3/3/2021 | 2149 | 4,483.68 | 7,615.36 | 330.09 | 560.64 | 4,813.77 |
| Week Ending 4/5/15 | 5/15/2015 | 3/3/2021 | 2119 | 6,194.22 | 10,669.60 | 437.43 | 753.48 | 6,631.66 |
| Week Ending 4/12/15 | 5/15/2015 | 3/3/2021 | 2119 | 10,182.68 | 17,539.75 | 705.37 | 1,215.00 | 10,888.05 |
| Week Ending 4/19/15 | 5/15/2015 | 3/3/2021 | 2119 | 9,372.55 | 16,144.29 | 678.75 | 1,169.16 | 10,051.30 |
| Week Ending 4/26/15 | 5/15/2015 | 3/3/2021 | 2119 | 10,107.75 | 17,410.68 | 718.60 | 1,237.80 | 10,826.35 |
| Week Ending 5/3/15 | 6/15/2015 | 3/3/2021 | 2088 | 8,751.02 | 15,297.50 | 640.47 | 1,119.60 | 9,391.49 |
| Week Ending 5/10/15 | 6/15/2015 | 3/3/2021 | 2088 | 8,991.62 | 15,718.09 | 661.96 | 1,157.16 | 9,653.58 |
| Week Ending 5/17/15 | 6/15/2015 | 3/3/2021 | 2088 | 7,382.21 | 12,904.71 | 543.48 | 950.04 | 7,925.69 |
| Week Ending 5/24/15 | 6/15/2015 | 3/3/2021 | 2088 | 3,077.09 | 5,379.00 | 226.53 | 396.00 | 3,303.62 |
| Week Ending 5/31/15 | 6/15/2015 | 3/3/2021 | 2088 | 2,293.83 | 4,009.80 | 168.87 | 295.20 | 2,462.70 |
| Week Ending 6/7/15 | 7/15/2015 | 3/3/2021 | 2058 | 588.19 | 1,043.20 | 43.30 | 76.80 | 631.50 |
| ELITE TERRAZZO FLOORING, INC. | | | | 103,905.26 | 178,898.72 | 7,415.59 | 12,770.64 | 111,320.84 |

## APPENDIX 2

### Court Calculations

| Week Ending | Date Due | Date Interest Calculated to | Days Late | Contributions Interest Due (Local) | Contributions Owed (Local) | Contributions Interest Due (Int'l) | Contributions Owed (Int'l) | Total Interest Due |
|---|---|---|---|---|---|---|---|---|
| 3/1/2015 | 4/15/2015 | 3/3/2021 | 2149 | $ 20,248.08 | $ 34,390.65 | $ 1,367.47 | $ 2,322.60 | $ 21,615.55 |
| 3/8/2015 | 4/15/2015 | 3/3/2021 | 2149 | $ 10,044.18 | $ 17,059.69 | $ 732.17 | $ 1,243.56 | $ 10,776.35 |
| 3/15/2015 | 4/15/2015 | 3/3/2021 | 2149 | $ 1,708.25 | $ 2,901.40 | $ 125.76 | $ 213.60 | $ 1,834.01 |
| 3/22/2015 | 4/15/2015 | 3/3/2021 | 2149 | $ 479.85 | $ 815.00 | $ 35.33 | $ 60.00 | $ 515.17 |
| 3/29/2015 | 4/15/2015 | 3/3/2021 | 2149 | $ 4,483.67 | $ 7,615.36 | $ 330.09 | $ 560.64 | $ 4,813.76 |
| 4/5/2015 | 5/15/2015 | 3/3/2021 | 2119 | $ 6,194.21 | $ 10,669.60 | $ 437.43 | $ 753.48 | $ 6,631.65 |
| 4/12/2015 | 5/15/2015 | 3/3/2021 | 2119 | $ 10,182.67 | $ 17,539.75 | $ 705.37 | $ 1,215.00 | $ 10,888.03 |
| 4/19/2015 | 5/15/2015 | 3/3/2021 | 2119 | $ 9,372.53 | $ 16,144.29 | $ 678.75 | $ 1,169.16 | $ 10,051.29 |
| 4/26/2015 | 5/15/2015 | 3/3/2021 | 2119 | $ 10,107.73 | $ 17,410.68 | $ 718.60 | $ 1,237.80 | $ 10,826.34 |
| 5/3/2015 | 6/15/2015 | 3/3/2021 | 2088 | $ 8,751.01 | $ 15,297.50 | $ 640.47 | $ 1,119.60 | $ 9,391.48 |
| 5/10/2015 | 6/15/2015 | 3/3/2021 | 2088 | $ 8,991.61 | $ 15,718.09 | $ 661.96 | $ 1,157.16 | $ 9,653.57 |
| 5/17/2015 | 6/15/2015 | 3/3/2021 | 2088 | $ 7,382.20 | $ 12,904.71 | $ 543.47 | $ 950.04 | $ 7,925.68 |
| 5/24/2015 | 6/15/2015 | 3/3/2021 | 2088 | $ 3,077.08 | $ 5,379.00 | $ 226.53 | $ 396.00 | $ 3,303.62 |
| 5/31/2015 | 6/15/2015 | 3/3/2021 | 2088 | $ 2,293.83 | $ 4,009.80 | $ 168.87 | $ 295.20 | $ 2,462.70 |
| 6/7/2015 | 7/15/2015 | 3/3/2021 | 2058 | $ 588.19 | $ 1,043.20 | $ 43.30 | $ 76.80 | $ 631.50 |
| Totals | | | | $103,905.11 | $178,898.72 | $ 7,415.58 | $ 12,770.64 | $111,320.68 |